# THE FIRST NATIONAL BANK OF ST. MARY'S

*vs.*

# THE MARYLAND CASUALTY COMPANY.

*Burglary Insurance—Construction of Policy—Rented Safe Deposit Boxes.*

A policy of insurance, like other contracts, is to be interpreted with the object of ascertaining the intention of the parties, as indicated by the language employed, understood in its plain, ordinary, and usual meaning.                    p. 459

In determining what is covered by the terms and provisions of a contract of insurance, it is necessary to ascertain the intention of the parties, as gathered from the language employed by them, and in ascertaining that intention, the court must consider the character of the contract, its object and purpose, and the facts and circumstances surrounding the parties at the time of its execution, by which they would ordinarily be influenced in making it.                    p. 460

Where a policy of burglary insurance, issued to a bank on securities in its vault, provided that it should not apply to securities which did not belong to the assured, were not held by it in trust, were not held as collateral, were not held by the assured in any other capacity as respects which it would be liable to the owner for their loss, nor to those in connection with which no books and accounts of the assured were so kept that the loss might be accurately determined, and further provided that in case of loss the insured should render under oath a detailed statement of the property on account of loss of which claim was made, the policy did not cover securities in boxes in the bank vault rented to individuals.                    pp. 461, 462

*Decided January 17th, 1923.*

Appeal from the Baltimore City Court (STEIN, J.).

Action by the First National Bank at St. Mary's, at Leonardtown, Maryland, against the Maryland Casualty Company. From a judgment for defendant, plaintiff appeals. Affirmed.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, and STOCKBRIDGE, JJ.

*William L. Marbury* and *Frank Gosnell,* with whom were *William Meverell Loker* and *Marbury, Gosnell & Williams* on the brief, for the appellant.

*Walter L. Clark,* with whom were *Henry B. Frere* and *Soper, Bowie & Clark* on the brief, for the appellee.

PATTISON, J., delivered the opinion of the Court.

The appeal in this case is from a judgment entered in the Baltimore City Court, in favor of the appellee, the Maryland Casualty Company, against the appellant, the First National Bank of St. Mary's, at Leonardtown, Md., in a special case stated under article 75, secs. 52-55, of the Code.

The action was brought by the appellant against the appellee upon two burglary insurance policies; one for forty thousand dollars, and the other for twenty thousand dollars, issued to it by the appellee, to recover the value of the contents of safe deposit boxes belonging to others, to whom the boxes were rented, which were stolen from the boxes by burglars who, in November, 1920, broke open and entered the vault of the bank in which the boxes were kept.

The form of the policies is known as "The American Bankers' Association Standard Form Bank Burglary and Robbery policy," which was devised and drafted by the American Bankers' Association, of which the appellant is a member.

The larger policy has attached to it two riders or endorsements. The smaller one is without riders. The form of each policy, however, is the same, and they differ only in the date

and the amounts of premium and insurance. The riders on the larger policy, which do not appear on the smaller one, were regarded and treated by the parties in the submission of the case below as unimportant in their operation and effect upon the case on trial. Therefore, as the policies are in all other respects alike, we will hereafter speak of them as one, and in referring to the appellant, we will call it the "bank," and in speaking of the appellee, we will refer to it as the "insurance company."

The policy provides that in consideration of the premises therein stated, the insurer, the insurance company, agrees to indemnify the insured, the bank, in the amount named and for the length of time therein mentioned.

"General Agreements.

"A. For all loss of money and securities from within any safe or vault to which insurance under this policy *applies* caused by the felonious abstraction of the same during the day or night by such persons after forcible entry by such person or persons or any accomplice thereof into the safe or vault while, duly closed and locked, located in the banking room described in the schedule."

The policy then provides, that

"The foregoing general agreements are made subject to the following special agreements, which shall be construed as conditions precedent to any recovery hereunder:

"Special Agreements.

"Definitions:

"No. 1. The term 'Money' as used in this policy shall be deemed to mean Currency, Coin, Bank Notes (signed and unsigned), Bullion, and Uncancelled United States Postage and Revenue Stamps. The term 'Securities' as used in this policy shall be deemed to mean Express, Postal, Pension and Bank Money Orders, Bonds, Debentures, Checks, Coupons, Demand and Time Drafts, Bills of Exchange, Acceptance,

Promissory Notes, Certificates of Deposit, Certificates of Stock, Warehouse Receipts, Bills of Lading, and all other instruments of a negotiable character as respects which, if negotiated by any holder, the Assured would have no recourse against the innocent holder thereof.

"When Company Not Liable:

"No. 2. The Company shall not be liable: (a) for loss of Money and Securities, unless they belong to the Assured, or are held by Assured in trust or as collateral for indebtedness to Assured, or are held by Assured in any other capacity as respects which Assured would be liable to the Owner for their loss, * * * (c) if the books and accounts of the Assured are not so kept that the loss may be accurately determined therefrom by the Company."

Other subdivisions of section 1 follow, and these are followed by other "Special Agreements," but of these, none need be mentioned for the purposes of this case, until we reach section 5, in which it is provided that in the event of a claim or loss under the policy, the bank shall furnish to the insurance company under oath,

"a statement in detail of the property on account of the loss or damage to which claim is made, a statement clearly defining the Assured's interest in such property. * * * The Assured shall, if requested, facilitate the adjustment of any claim for loss made hereunder by producing at the place of loss any and all books, papers, and vouchers, bearing in any way upon the claim made, and such other evidence as may be reasonably required to substantiate the claim."

It is set out in the special case stated, that before and at the time of issuing the policies, the assured was a member of the American Bankers' Association, and had at such time, as a part of their business, or in connection therewith, a number of safe deposit boxes which it rented to its depositors,

who alone had access thereto, and that on the night of the 12th. day of November, 1920, while the policies were still in force, burglars forcibly entered the bank, and broke open its vault and after unsuccessfully undertaking to enter the burglar proof safe therein, broke open the boxes that were in the vault on the outside of the safe, and feloniously abstracted the contents therefrom.

The agreed statement of facts contains the admission

"That the plaintiff (the bank) kept no book or record of the contents of said safe deposit boxes and that it had no way of accurately determining from its books or records the pecuniary losses suffered and sustained by the said renters of said safe deposit boxes, but which said losses were actually ascertained by the plaintiff from affidavits from the box renters and otherwise, in which said affidavits the box renters make oath that as a result of said burglary they have lost securities, other than registered bonds, amounting in the aggregate to $11,164.55 at the market value at the time of the loss."

In the record is found a letter, dated the 15th day of November, 1920, to the bank's cashier, from an employee of the insurance company, A. B. Nickerson, "examiner of claims," which was admitted as a part of the case stated, in which it is said:

"Answering your inquiry over the 'phone, I beg to advise you that the company is not liable for the contents of the safety deposit boxes, which were rented and which property is not the property of the bank. I refer you to Special Agreement (2), Section (a)."

It is admitted that the bank is liable to the renters of the boxes for the pecuniary losses sustained by them, resulting from said burglary, and that such losses the bank has for the purposes of this case paid and satisfied.

It was also admitted that all things had been done by the bank that it should have done to entitle it to recover against

the insurance company for the loss of the contents of the boxes, should the court determine that the insurance company was liable therefor under said policies issued by it; and it was agreed that if the court held that the insurance company was liable, it should enter a verdict and judgment for the amount of its liability with costs. But if the court should find that the insurance company was not liable, it should then enter a judgment in its favor for costs. The court found that the insurance company was not liable and a judgment for defendant's costs was accordingly entered. It is from that judgment that the appeal in this case was taken. As stated in the brief of the appellant, the sole question involved in this appeal is whether the appellant is entitled to recover from the appellee under its burglary policies for the contents of the boxes burglarized. This depends upon the proper construction of the language employed in the policy.

As stated in 14 *R. C. L.* 931, sec. 103, it is a well settled rule "that contracts of insurance, like other contracts, are to be construed according to the sense and meaning of the terms which the parties have used, and if they are clear and unambiguous, their terms are to be taken and understood in their plain, ordinary, and popular sense." They "like other contracts must receive a reasonable interpretation consonant with the apparent object and plain intent of the parties."

In *Washington Fire Insurance Co.* v. *Kelly,* 32 Md. 435, the Court said: "The policy of insurance in this case, with all of its provisions and conditions, is the written contract between the insurer and the insured, and * * * the same principles of construction govern the contract of insurance, as other written contracts. In its interpretation, as in all other contracts, the intention of the contracting parties is to be regarded and where that can be ascertained, it must govern and control their rights under it, if not in conflict with the law. *Maryland Insurance Co.* v. *Bossiere,* 9 G. & J. 155."

In the later case of *Westchester Fire Insurance Co.* v. *Weaver,* 70 Md. 536, it was said: "The law presumes that

the parties understand the contract they make, and every intelligible condition was inserted by design, and was intended to accomplish some purpose. The Court also repudiates the principles of interpretation adopted in some cases, that such contracts are to be construed most strongly against the underwriter, but adopts the sounder rule that the *intention* of the parties, as gathered from the whole instrument, must prevail." See also *Agricultural Insurance Company* v. *Hamilton,* 82 Md. 88; *Reynolds, use of Lee,* v. *German American Insurance Co.,* 107 Md. 110; *Palatine Insurance Co.* v. *O'Brien,* 107 Md. 354; *Joffe* v. *Niagara Fire Insurance Co.,* 116 Md. 155.

In *Palatine Insurance Co.* v. *O'Brien, supra,* this Court said: "The contract is to be governed by the same principles which apply to other contracts. * * * The language employed must be understood in its plain, ordinary, and usual meaning and the intention of the parties as gathered from the language used is to control."

We will first determine in this case whether, by a proper construction of the contract of insurance, the contents of the safe deposit boxes were covered by the terms and provisions of the policy. To determine this question, we must ascertain the intention of the parties, gathered from the language employed by them, and in ascertaining that intention, we are to consider the character of the contract, its object and purpose, and the facts and circumstances surrounding the parties at the time of its execution, by which they would ordinarily be influenced in making it.

The policy in this case was obtained by the bank and was issued to indemnify it "for all loss of money and securities from within any safe or vault to which insurance under this policy *applies* caused by the felonious abstraction of the same * * * by any person or persons after forcible entry * * * into the safe or vault while duly closed and locked, located in the banking room described in the 'schedules.'" By reference to the schedules, the banking room and vault mentioned in

the policy, are those of the appellant at Leonardtown, Md. And to ascertain what "money and securities" are meant, we must look to the provisions of the policy.

In the policy are found certain provisions, designated "special agreements," to which the "general agreements" are made subject, which as stated in the policy, shall be construed to be conditions precedent to the right to recover under the policy.

The first of these "special agreements" defines what is meant by "money" and "securities." These definitions we have already fully set out and for the purposes of this case we need not further allude to them.

The second "special agreement" states for what "money and securities" the insurer, the insurance company, shall not be liable under the policy. These are stated to be:

First.—Those which do not belong to the assured.

Second.—Those which are not held by the assured in trust.

Third.—Those which are not held as collateral for indebtedness to the insured.

Fourth.—Those which are not held by the assured in any other capacity as respects which the assured would be liable to the owner for their loss, and

Fifth.—Those in connection with which no books and accounts of the assured are so kept that the loss may be accurately determined therefrom by the insurer.

The meaning and effect intended by the parties to be given to the above provisions of the policy, was, we think, that the "money and securities" therein mentioned, were not to be covered by the policy.

It is expressly admitted that no books whatever were kept by the insured, or in fact by anyone, by which the loss resulting from the felonious abstraction of the contents of the boxes may be determined, and we think that it may be safely stated, that it was known to both the insurer and the insured, at the time of the issuance of the policy, that books are not kept by banks in respect to boxes so rented to depositors, who alone

have access to them, by which the contents of the boxes may in case of loss be ascertained. The provision, we think, was inserted in the policy for the very purpose of excluding therefrom the contents of such boxes and like property, in connection with which no books are so kept from which, in case of loss, the amount thereof may be accurately ascertained.

That it was the intention of the parties that the contents of the boxes should not be covered by the policy is further shown by the provisions therein, that in case of loss, the insured was to render, under oath, a detailed statement of the property "on account of the loss of which claim is made" and if requested, facilitate the adjustment of the claim for loss, by producing any and all books, papers and vouchers bearing in any way upon the claim made.

It was, or should have been known to both parties, as we have said, that no books are kept by banks in such cases, and because of this they, under oath, could not have rendered a detailed statement of the contents of the boxes, on account of the loss or damage to which claim is made, and as no books are kept, none could be produced as required by the policy to facilitate the adjustment of the claim. The law, as we have said, presumes that "the parties understand the contract they make." If so, it does not seem reasonable that they intended to include within the provisions of the policy, property in respect to which it was impossible, as known to the parties, for the assured to do that which under the policy he was required to do in order to recover thereunder.

It may also be said that it is difficult to conceive that an indemnity insurance company, interested in its own welfare and reasonably thoughtful as to the risks assumed by it, would insure, by a policy of this character issued to the bank, the contents of rented safe deposit boxes, of which not only the insurer, but the insured, has no knowledge and can obtain none, except through the holders of the boxes, who alone have access to them, and upon whose truthfulness and honesty, both the insurer and the insured must entirely depend there-

for, at a time when they are strongly tempted to exaggerate the amount of loss, knowing they alone have knowledge of the contents of the boxes and are in a position where they cannot be contradicted.

As, in our opinion, the contents of the safe deposit boxes were not covered by the policy, the question of waiver involved in the contention of the appellant is not presented or does not arise.

The learned judge, we think, was right in the conclusion he reached, and, therefore, we will affirm the judgment entered by him.

*Judgment affirmed, with costs.*