HARRY R. STANLEY AND WIFE, MAE K. STANLEY v. MERLE D. COX.

(Filed 20 January, 1961.)

1. **Divorce and Alimony § 20: Husband and Wife § 12—**
    Provisions in a deed of separation for the payment of a designated sum monthly to the wife and for division of their property do not constitute "alimony" or a contract for alimony, and the executed provisions of such deed of separation, in the absence of a stipulation to the contrary therein contained, are not affected by their subsequent divorce.

2. **Mortgages § 1—**
    Liens may be created by agreement, and every executory agreement

STANLEY v. COX.

in writing that sufficiently describes certain property, and expresses the intent that the property should be security for a debt or other obligation, creates an equitable lien enforceable against all except those having a superior title or claim or who take without notice.

**3. Divorce and Alimony § 21:   Husband and Wife § 11:   Judgments § 10:   Mortgages § 1—**

Where, upon the jury's verdict upon appropriate issues, the court enters judgment decreeing divorce and providing that by consent of the husband it was decreed that he should make the payments specified in the deed of separation theretofore executed by the parties, and referred to in the judgment, and that such payments should constitute a lien upon the real property of the husband, the consent provisions constitute an equitable lien upon the husband's realty.

**4. Judgments § 8—**

A consent judgment is a contract of the parties entered upon the records with the approval and sanction of a court of competent jurisdiction, and depends for its validity upon the consent of both parties.

**5. Same— Record held to disclose that portions of judgment in question were entered by the consent of both parties.**

Where a divorce decree entered upon verdict of a jury refers to a prior deed of separation executed by the parties and stipulates that by consent of the husband it is decreed that the husband should make the payments specified in the deed of separation and that such payments should constitute a lien on his realty, and the consent decree is signed in behalf of the husband by his attorneys, *held*, the consent portions of the decree constitute a valid consent judgment even though not signed by the wife or her attorneys, since the signature of the parties is not necessarily essential to the validity of a contract, and it being apparent from the record that the consent provisions were in fact a contract and agreement between the husband and wife.

**6. Same—**

It will be presumed that the attorneys for a party signing a consent judgment acted in good faith and had the authority to sign it in behalf of their client.

**7. Judgments § 10:   Husband and Wife § 11:   Contracts § 19—**

Provision in a deed of separation that each of the parties might thereafter convey the realty allotted to him or her, respectively, without the signature of the other and free from any claims of the other, is superseded by a later consent judgment which stipulates that the payments to the wife provided for in the consent judgment should constitute a lien on the husband's realty, since the consent judgment constitutes a new agreement entered into after the execution of the deed of separation and before the rights of third party have intervened.

**8. Quieting Title § 2—**

Where plaintiff's pleadings affirmatively disclose that defendant's claim constitutes a valid and subsisting lien on the property, demurrer is

properly allowed in plaintiff's action to remove such claim as a cloud on title.

## 9. Husband and Wife § 11—

Where a separation agreement provides in specific and unambiguous terms that the wife should have the right to sole possession and occupancy of the home owned by the parties, other provisions of the agreement giving her the option to surrender possession upon certain contingencies and receive larger monthly payments from him, etc., does not render her right to sole possession and occupancy of the realty uncertain or indefinite or constitute her a mere tenant at will, the separation agreement being construed as a whole to effectuate the intention of the parties, and her right to possession is valid and enforceable between them and their assigns with notice.

## 10. Tenants in Common § 4—

An agreement between two tenants in common for the use and occupancy solely by one tenant is valid and enforceable as between them and their representatives and assigns with notice.

## 11. Contracts § 12—

An agreement will be construed as a whole and detached portions will be reconciled with the dominant intent as gathered from the entire instrument if possible, or if this cannot be done, will be rejected as repugnant to such intent.

## 12. Same—

An agreement must receive a reasonable interpretation in accordance with the intention of the parties at the time the agreement is executed, which intent is to be gathered from the language employed by them, taking into consideration the character of the contract and its objects and purposes.

## 13. Same—

Where a contract is susceptible to two constructions, one fair and reasonable and the other inequitable or under which it would operate as a snare, the courts will adopt that construction which makes the agreement rational and such as a prudent man would naturally execute.

APPEAL by plaintiffs from *Gwyn, J.,* 13 June 1960 Regular Civil Term, of GUILFORD — Greensboro Division.

Statutory action, by virtue of G.S. 41-10, to quiet title to realty against adverse claims, heard upon a demurrer to the complaint and the amendment thereto.

The complaint and the amendment thereto allege in substance these facts:

All the parties reside in Guilford County, and the realty, which is the subject matter of this action, is situate in the city of Greensboro in the same county. Truitt V. Cox and Merle D. Cox, the present de-

fendant, were married on 14 November 1943. Prior to May 1948 they occupied this realty as their home. In May 1948 they separated, and since that time have lived separate and apart. Since such separation Merle D. Cox has continuously been in possession of this realty.

On 8 June 1950 Truitt V. Cox instituted an action for absolute divorce against Merle D. Cox, pursuant to G.S. 50-6, on the ground that they had lived separate and apart for two years. Merle D. Cox filed answer admitting the separation for two years, averring that such separation was the fault of her husband, and set up a cross-action for divorce from bed and board, pursuant to G.S. 50-7, and prayed, pursuant to G.S. 50-14, that the court enter a decree awarding her alimony.

Prior to the entry of the judgment in this divorce action, there was pending and at issue on the civil issue docket of Guilford County Superior Court a civil action brought by Truitt V. Cox against Merle D. Cox, which was commenced on 12 April 1950, wherein Truitt V. Cox seeks to have title to the realty here vested in the parties as tenants by the entirety. Apparently, Merle D. Cox held title to the realty.

During the pendency of these two civil actions Truitt V. Cox and Merle D. Cox entered into a separation agreement on 19 January 1951, which was duly recorded on the same day, and is attached to the complaint as Exhibit A, and made a part thereof. It appears on pages 9-22 in the record. This contract and agreement sets forth in great detail the rights and obligations of the parties thereto as agreed upon by them. In consideration of the sum of one dollar paid to each of the parties, and in further consideration of the agreements, stipulations and covenants therein contained, the parties mutually stipulated, agreed and covenanted with each other in substance as follows, except when the exact words are quoted:

One. Merle D. Cox shall have the right to live separate and apart from her husband and free from his authority, as if she were unmarried, and to make contracts, engage in business, etc., as if she were unmarried. Truitt V. Cox shall have the same rights.

Two and Three. Merle D. Cox conveyed, released and quitclaimed unto her husband all rights, estate or property, including dower, in any property real or personal which her husband owned or may hereafter acquire. Truitt V. Cox did likewise in respect to any property owned or hereafter acquired by his wife, including all rights of curtesy.

Four. It is covenanted and agreed that this paragraph shall be construed and considered as a bill of sale from Truitt V. Cox to Merle D. Cox, and Truitt V. Cox hereby grants, conveys, assigns and de-

livers unto Merle D. Cox all furnishings and equipment in the dwelling house and garage apartment, which was formerly occupied by them as husband and wife and is the realty here, to be her sole, separate, absolute and unconditional property.

Five. The civil action now pending between them on the civil issue docket of Guilford Superior Court, wherein Truitt V. Cox seeks to have title to the realty here vested in the parties as tenants by the entirety, shall be terminated by a consent judgment of dismissal, and there shall be simultaneously with the execution of this separation agreement an exchange of deeds so as to constitute the parties tenants in common of the realty here.

Six. Truitt V. Cox covenants, contracts and agrees to keep up the payments due on the mortgage on the realty here until the mortgage debt is paid in full. In the event of Merle D. Cox's death before the mortgage debt is paid in full, Truitt V. Cox shall pay off immediately the mortgage debt so that her heirs may receive her one-half undivided interest in the realty free from encumbrance. In the event Truitt V. Cox dies before the mortgage debt is paid in full, his estate shall be liable for the balance due on the mortgage debt, and it shall constitute a lien upon his one-half undivided interest on the realty, so that Merle D. Cox's one-half undivided interest in the realty shall be free from encumbrance. Truitt V. Cox covenants and agrees to pay all *ad valorem* taxes and hazard insurance premiums on the realty so long as both of the parties hereto are living, to pay for major repairs and structural maintenance on the realty during Merle D. Cox's life, except where such replacement is made necessary by reason of damage caused by the negligence of Merle D. Cox, her tenants or lessees, and to be responsible for all necessary painting on the outside of the buildings on the realty. Merle D. Cox is to take care of ordinary maintenance, which is specified in detail. Provision in detail is made as to notice for major repairs, and how such repairs may be determined, if not agreed upon.

Seven. Merle D. Cox "shall have the right to sole possession and occupancy of the home and garage apartment on the High Point Road (the realty here) so long as she lives, except as provided below." While she has possesion of this property, she is to retain all rents if she rents any portion of it, and in addition Truitt V. Cox shall pay to her for her sole use and benefit $100.00 a month. In the event Merle D. Cox shall decide to enter a nursing home or change her place of residence, she shall have the option of retaining possession of the property and receiving the rentals therefrom, or she may surrender possession to Truitt V. Cox upon such terms with reference to rentals

therefrom as he may deem proper. In the event Merle D. Cox enters a nursing home or changes her place of residence, and elects to retain possesion of the property and receive for her use the rents therefrom, then Truitt V. Cox shall pay to her $50.00 a month instead of $100.00 a month. In the event Merle D. Cox elects to surrender the property to Truitt V. Cox for rental, then he shall pay to her $250.00 a month, so long as he retains possession of the property and receives the rentals therefrom. Provision is made that Merle D. Cox, if she surrenders possession of the property to Truitt V. Cox, shall have the option of repossessing said property if she so desires, and receiving the rentals therefrom, and if she does so, he shall pay her $100.00 a month so long as she actually lives on the property. However, if she lives elsewhere, and repossesses the property to obtain the rents for her use, then he shall pay her $50.00 a month during such time.

Eight. If Merle D. Cox exercises the option of surrendering possession of the High Point Road property to Truitt V. Cox for rental by him, then he shall have the option of taking over the property furnished or not as he may elect. However, if he elects to take over the property furnished, then she shall be entitled to remove therefrom her cedar chest, electric ironer and mangle, all silverware and china, handpainted pictures, radios and sewing machine. If he takes over the premises furnished, he shall be liable for all damage to the furniture and fixtures, ordinary wear and tear excepted, for the payment of all *ad valorem* taxes, and of insurance premiums on the furniture and fixtures, while the property is in his possession or that of his tenants. If he is in possession of the premises at Merle D. Cox's death, his right to possession of the furniture and fixtures shall terminate at once.

Nine. All payments required by this agreement to be made by Truitt V. Cox to Merle D. Cox shall be paid monthly in advance or on or before the 10th day of each month.

Ten. Truitt V. Cox so long as Merle D. Cox lives shall pay all her reasonable and necessary local doctor's and medical bills.

Eleven. Merle D. Cox agrees that her cross-action for divorce from bed and board alleged in her answer to Truitt V. Cox's complaint in his divorce action against her shall be dismissed, and she acknowledges that they separated in May 1948, and have not lived together since.

Twelve. At no time hereafter shall Merle D. Cox be entitled to receive from Truitt V. Cox any other support, maintenance or

thing, except as provided for her benefit in the separation agreement.

Thirteen. "It is the understanding, agreement and covenant, on the part of each of the parties hereto, that in the sale, transfer and conveyance of any property hereafter, whether real, personal or mixed, that it shall not be necessary, in order that the grantee obtain a good title, that either of the parties hereto shall sign and execute any deed, conveyance or bill of sale of the other party owning the same, it being the understanding, contract and covenant between the parties hereto that in all respects each of the parties hereto has forever discharged the property of the other from any and all claims, interests and easements on his or her part, and each of the parties hereto shall be in the same position as a free trader, as if the said parties were single and unmarried and as if the intermarriage between the parties hereto had never taken place. However, it is agreed and covenanted between the parties hereto, and each party for himself and herself covenants, contracts and agrees with the other and with each other, and all persons interested herein, that each shall and will at any times hereafter, make, execute and deliver any and all further assurances of title by joining in the execution of deeds or other instruments required by the purchaser, or which either of the parties hereto shall reasonably require in order to give effect to such instruments and to the covenants, provisions and agreements hereof."

Fourteen. It is mutually covenanted and agreed that all the covenants, stipulations, promises and agreements contained in the separation agreement shall bind the heirs, executors, administrators, personal representatives and assigns of the parties to the separation agreement.

Fifteen. Not pertinent on this appeal.

Truitt V. Cox and Merle D. Cox signed the separation agreement, and they acknowledged the signing and execution of the same before the clerk of the Superior Court of Guilford County. The clerk's certificate of the acknowledgment of the execution of the separation agreement by Merle D. Cox complies with the provisions of G.S. 52-12.

Simultaneously with the execution of the separation agreement Truitt V. Cox and Merle D. Cox executed and delivered to Mary L. Clapp a warranty deed conveying to her the realty here in fee simple. On 19 January 1951 the grantors acknowledged the execution of the deed before the clerk of the Superior Court of Guilford County, and the clerk's certificate as to the acknowledgment of the execution of the deed by Merle D. Cox complies with the provisions of G.S. 52-12. This deed is properly recorded. Simultaneously therewith Mary L.

STANLEY *v.* COX.

Clapp, unmarried, executed a warranty deed conveying the realty here to Truitt V. Cox and Merle D. Cox in fee simple as tenants in common. This deed is properly recorded.

On 22 January 1951 at the January Term of court the divorce action of Truitt V. Cox against Merle D. Cox was tried, and the jury answered the issues in favor of the plaintiff. The judgment entered therein recites that Merle D. Cox's cross-action for divorce from bed and board was dismissed as of voluntary nonsuit for the reason that the parties entered into a separation agreement on 19 January 1951 in which Truitt V. Cox agreed to make certain payments for the use and benefit of Merle D. Cox as set forth in the separation agreement, which is duly recorded. The judgment then sets forth the issues and the jury's answers thereto, and decrees that Truitt V. Cox is granted an absolute divorce from Merle D. Cox. Then the following paragraph appears at the end of the judgment:

"By consent of the plaintiff, IT IS FURTHER ORDERED AND DECREED that the plaintiff shall pay to the defendant each, every and all the payments specified in the aforesaid agreement dated January 19, 1951, as the same shall fall due and become payable from time to time, the defendant to have the right to move the court for attachment of the plaintiff as for civil contempt in the event the plaintiff shall fail to make any of said payments which are specified in said agreement, and IT IS FURTHER ORDERED AND ADJUDGED that said payments shall be and remain a lien upon the estate and property of the plaintiff; and that the costs of this action shall be paid by the plaintiff.

This, the 22nd day of January, 1951.
DAN K. MOORE,
Judge Presiding.

Plaintiff consents to the last paragraph of the foregoing decree:
HARRY R. STANLEY
NORMAN A. BOREN
Attorneys for the Plaintiff."

Harry R. Stanley, one of the attorneys for Truitt V. Cox, is one of the plaintiffs in the instant case. Merle D. Cox did not give her consent to the divorce judgment, either in person or by her attorney. The divorce judgment was duly recorded.

On 22 January 1951 Truitt V. Cox, unmarried, executed and delivered to the plaintiffs in this action a warranty deed conveying to

them a fee simple title to a one-fourth undivided interest in the realty here, which is duly recorded.

On 16 August 1957 Truitt V. Cox, Merle D. Cox and the plaintiffs here as tenants in common of the realty here instituted an action in the Superior Court of Guilford County to correct an error in a call describing the realty here, and in the complaint therein, which was signed and verified by Merle D. Cox, it was stated that the plaintiffs here owned a one-fourth undivided interest in the realty here by a properly recorded deed from Truitt V. Cox. Merle D. Cox has had actual knowledge of the deed from Truitt V. Cox to plaintiffs at least since August 1957.

Merle D. Cox claims that the terms of the divorce judgment create a lien on plaintiffs' one-fourth undivided interest in the realty here to secure the payments by Truitt V. Cox to Merle D. Cox as provided in the separation agreement.

Merle D. Cox further claims that by the terms of Article 7 of the separation agreement she acquired the right of sole possession and occupancy of Truitt V. Cox's one-half undivided interest in the realty here so long as she lives, and this right is superior to plaintiffs' title.

That these adverse claims of Merle D. Cox in respect to plaintiffs' one-fourth undivided interest in the realty here burden plaintiffs in the full enjoyment of their realty, including the right to dispose of it at its fair market price. Merle D. Cox is now in possession of the one-half undivided interest of Truitt V. Cox in the realty here asserting her claims as above set forth, and excluding plaintiffs therefrom, and claiming that plaintiffs may not sell their interest in the realty here except that a purchaser take a conveyance subject to her claims.

The defendant demurred to the complaint and the amendment thereto for the reason that it does not state facts sufficient to constitute a cause of action in that it appears from the face thereof and the separation agreement attached thereto as an exhibit and made a part thereof, that there is no cloud on plaintiffs' title, and that defendant's interest in the realty here was created and made of record prior to any conveyance of a one-fourth undivided interest therein to plaintiffs, and that this was done with the knowledge and participation of the plaintiff Harry R. Stanley, attorney of record for Truitt V. Cox.

The court entered an order sustaining the demurrer, and as the plaintiffs announced they did not wish to amend the complaint because there were no further facts they could allege, the court dismissed the action and taxed plaintiffs with the costs.

From the judgment, plaintiffs appealed.

*Adam Younce for plaintiffs, appellants.*

*Smith, Moore, Smith, Schell & Hunter By: Charles E. Melvin, Jr., for defendant, appellee.*

PARKER, J.  Plaintiffs state in their brief, "the validity of defendant's claim of lien is governed by the state of the law in 1951, and involves the validity of the court's decree as a consent judgment for a lien to secure alimony in the divorce action of that year. G.S. 50-11. . . . In 1951 a consent judgment for alimony entered in an action for divorce *a vinculo* was unenforceable as a decree of court."

*Ruffin, C. J.*, said for the Court in *Rogers v. Vines*, 28 N.C. 293: "Now, 'alimony' in its legal sense may be defined to be that proportion of the husband's estate which is judicially allowed and allotted to a wife for her subsistence and livelihood during the period of their separation." This has been quoted with approval in *Hester v. Hester*, 239 N.C. 97, 79 S.E. 2d 248, and in *Taylor v. Taylor*, 93 N.C. 418.

The divorce judgment recites, "by consent of the plaintiff, IT IS FURTHER ORDERED AND DECREED that the plaintiff shall pay to the defendant each, every and all the payments specified in the aforesaid agreement dated January 19, 1951." The agreement referred to in the divorce judgment is an executed separation agreement and property settlement, and is not alimony or a contract for alimony. For a discussion of the clear distinction between the provisions and considerations for a property settlement and those for alimony see 17A Am. Jur., Divorce and Separation, § 883 *et seq.* In the absence of a provision in the executed separation agreement and property settlement here to the contrary, it is not avoided or nullified by the subsequent divorce of the parties. *Jenkins v. Jenkins*, 225 N.C. 681, 36 S.E. 2d 233, and cases cited; 42 C.J.S., Husband and Wife, p. 188. See *Jones v. Lewis*, 243 N.C. 259, 90 S.E. 2d 547, to the effect that an executed property settlement is not affected by a mere reconciliation and resumption of cohabitation.

Plaintiffs state further on in their brief, "plaintiffs do not attack the validity of the judgment as an approval of the contract for alimony. They attack only the lien of the judgment and seek to remove it as a cloud on title." Plaintiffs contend that the lien upon the estate and property of plaintiff to make the payments to Merle D. Cox set forth in the separation agreement and property settlement cannot be enforced as a contract for the reason that Merle D. Cox did not consent to the lien of the judgment, and they so allege.

The judgment recites, "by consent of the plaintiff . . . IT IS

FURTHER ORDERED AND ADJUDGED that said payments shall be and remain a lien upon the estate and property of the plaintiff." There appears on the face of the judgment the following: "Plaintiff consents to the last paragraph of the foregoing decree: Harry R. Stanley, Norman A. Boren, Attorneys for the Plaintiff."

It seems settled beyond question that liens can be created by agreement. 33 Am. Jur., Liens, p. 421. Generally, a lien can be created only by the owner, or by some person authorized by him. 33 Am. Jur., Liens, p. 423.

This Court said in *Winborne v. Guy*, 222 N.C. 128, 22 S.E. 2d 220: "The doctrine may be stated in its most general form, that every express executory agreement in writing, whereby the contracting party sufficiently indicates an intention to make some particular property, real or personal, or fund, therein described or identified, a security for a debt or other obligation, . . . , creates an equitable lien upon the property so indicated, which is enforceable against the property in the hands not only of the original contractor, but of his heirs, administrators, executors, voluntary assignees and purchasers or encumbrancers with notice. . . . Where there is an intention coupled with a power to create a charge on property, equity will enforce such charge against all except those having a superior claim. Such liens are simply a right of a special nature over the thing which constitutes a charge or encumbrance upon the thing itself." The first sentence quoted also appears in *Godwin v. Bank*, 145 N.C. 320, 59 S.E. 154, and is taken from what now appears in Pomeroy's Equity Jurisprudence, 5th Ed., Vol. 4, p. 696, and also in earlier editions of Pomeroy. This language of Pomeroy has been approved by the Supreme Court of the United States in *Walker v. Brown*, 165 U.S. 654, 41 L. Ed. 865, and in *United States v. Butterworth — Judson Corp.*, 267 U.S. 387, 69 L. Ed. 672. The doctrine clearly indicates an application of the maxim, equity regards as done that which ought to be done.

"In equity, any agreement in writing, however informal, made by the owner of land, upon a valid consideration, by which an intention is shown that the land shall be security for the payment of money by him, creates an equitable lien upon the land." Tiffany, Real Property, 3rd Ed., Vol. 5, § 1563, p. 659.

"The form or particular nature of the agreement which shall create a lien is not very material, for equity looks at the final intent and purpose rather than at the form; and if the intent appear to give, or to charge, or to pledge property, real or personal, as a security for an obligation, and the property is so described that the principal

things intended to be given or charged can be sufficiently identified, the lien follows. Among the kinds of agreement from which liens have been held to arise, the following are some important examples: Executory agreements which do not convey or transfer any legal estate in the property, but which stipulate that the property shall be security, or which pledge it, for the performance of an obligation." Pomeroy's Equity Jurisprudence, 5th Ed., Vol. 4, § 1237, pp. 702-703.

This is said in 33 Am. Jur., Liens, p. 428: "An equitable lien on particular property, real or personal, enforceable against the owner, his heirs, personal representatives, or transferees, except bona fide purchasers for value, may be created by an express agreement by such owner that such property shall stand or be held as security for the payment of a specified debt or other obligation."

A good example of an equitable lien is found in *Walker v. Brown, supra.* In that case, one T. E. Brown addressed to Walker & Co. a letter advising them that a loan of bonds, to the face value of fifteen thousand dollars, previously made by him to one Lloyd, for the use of the latter's firm, was "with the understanding that any indebtedness that they may be owing you at any time, shall be paid before the return to me of these bonds, or the value thereof, and that these bonds or the value thereof are at the risk of the business of Lloyd & Co., so far as any claim you may have against said Lloyd & Co. is concerned." Upon the faith of this letter Walker & Co. made sales to Lloyd & Co., and the latter firm subsequently failed. Shortly after the letter was written, and before the failure, Brown induced Lloyd & Co. to return to him the bonds, which he thereupon settled upon his wife. On a bill filed by Walker & Co., the Supreme Court of the United States held that the letter gave them an equitable lien on the bonds which could be asserted as against Brown's wife, who was a mere volunteer.

Webster, New International Dictionary, 2nd Ed., defines the word consent: "4. Law. Capable, deliberate, and voluntary assent or agreement to, or concurrence in, some act or purpose, implying physical and mental power and free action." Black's Law Dictionary, 4th Ed., defines the term consent: "A concurrence of wills. Voluntarily yielding the will to the proposition of another; acquiescence or compliance therewith."

The divorce judgment recites that the lien was created by consent of the plaintiff, and his consent is shown by the signature of his attorneys to the judgment. Considering the consent part of the divorce judgment to ascertain the intent of the parties, it seems manifest that the consent of plaintiff to the provision creating a lien to secure

the payments specified in the separation agreement and property settlement between him and his wife was a concurrence of wills and agreement and contract between him and Merle D. Cox. Certainly, it was not an agreement or contract with anyone else. This Court said in *Coppersmith v. Ins. Co.*, 222 N.C. 14, 21 S.E. 2d 838: "The signing of a written contract is not necessarily essential to its validity." The fact that Merle D. Cox by herself or by her attorney did not sign the consent part of the divorce judgment does not affect its validity as a consent part of the judgment. *LaLonde v. Hubbard*, 202 N.C. 771, 164 S.E. 359.

A consent judgment is the contract of the parties entered upon the records with the approval and sanction of a court of competent jurisdiction. *In re Will of Pendergrass*, 251 N.C. 737, 112 S.E. 2d 562. It depends for its validity upon the consent of both parties, without which it is void. *Ledford v. Ledford*, 229 N.C. 373, 49 S.E. 2d 794.

The attorneys for plaintiff, one of whom is a plaintiff in the instant case, having signed the consent part of the divorce judgment creating the lien plaintiffs assail, are presumed to have acted in good faith, and to have had the necessary authority from their client, and not to have betrayed his confidence or to have sacrificed his rights. *Gardiner v. May*, 172 N.C. 192, 89 S.E. 955. No lack of authority on their part is averred in plaintiffs' complaint. The consent of Merle D. Cox to the divorce part of the divorce judgment creating the lien in effect is alleged in the complaint as follows: "Merle D. Cox claims that the terms of the divorce judgment, as recorded . . . , creates a lien on plaintiffs' one-fourth undivided interest in the land and that such lien is security for the payment of alimony provided for her in said divorce decree and the separation agreement attached hereto."

The consent part of the divorce judgment creating the lien was not predicated upon the pleadings in the divorce action, but the court had jurisdiction and the parties had power to consent, which they did. That makes the consent part of the judgment creating the lien conclusive and enforceable. *Keen v. Parker*, 217 N.C. 378, 8 S.E. 2d 209.

It is true that the complaint alleges, Merle D. Cox did not give her consent to the divorce judgment, either in person or by her attorney. However, the divorce decree is alleged in the complaint, and the court will look to its provisions rather than the general allegations in the complaint or the conclusions of the pleader to ascertain as to whether the consent part of the divorce judgment is a consent judgment. *Yeager v. Dobbins*, 252 N.C. 824, 114 S.E. 2d 820.

There is no merit in plaintiffs' contention that the mutual cove-

nants in Article 13 of the separation agreement, copied verbatim in the statement of facts above, operate to discharge plaintiffs' land from the lien created by consent of the parties in the divorce judgment, for the reason, *inter alia,* that the new contract and agreement set forth in the divorce decree creating such lien by consent was entered into after the separation agreement was executed, and before rights of third parties had intervened. It is manifest that this was the clear intention of the parties. "A contract may be discharged by the substitution of a new contract, and this results: . . . ; (3) where new terms are agreed upon, in which case a new contract is formed, consisting of the new terms and of the terms of the old contract which are consistent with them." *Redding v. Vogt,* 140 N.C. 562, 53 S.E. 337, 6 Anno. Cas. 312.

The consent part of the divorce judgment creating the lien assailed shows a specific intention to create such lien, a description and identification of the property of plaintiff intended to be charged so it can be identified, which property is distinctly appropriated or dedicated to or as security for the payment of the amounts specified in the separation agreement and property settlement entered into by and between Truitt V. Cox and Merle D. Cox, his wife, and a valid consideration. The property sold by Truitt V. Cox to plaintiffs had been acquired by him three days before the trial of the divorce action and the rendition of the judgment therein. Whether the lien provided for by consent in the divorce judgment covers property subsequently acquired by Truitt V. Cox is not before us for decision, and upon that we express no opinion.

In brief, the allegations of the complaint affimatively show the existence of a valid equitable lien in favor of Merle D. Cox upon the property plaintiffs purchased with notice from Truitt V. Cox, and such lien is not a cloud upon their title.

Plaintiffs allege that Merle D. Cox claims that by the terms of Article 7 of the separation agreement she acquired from Truitt V. Cox, who was then the owner of a one-half undivided interest in the land, the right of sole possession and occupancy of his one-half interest so long as she lives and that such claim is superior to their title and constitutes a cloud upon their title. In their brief plaintiffs state: "Plaintiffs make no contention that the separation agreement is unenforceable as a contract." Plaintiffs state further in their brief: they "do not seek relief in the complaint for possession of the premises. They seek only to quiet her adverse claims while she is in possession."

Plaintiffs' contention is: "(A) Articles 7 and 8 of the agreement

create a tenancy at will, terminable at the pleasure of the defendant. (B.) And Article 13 of the agreement confers upon the landlord a power to terminate the tenancy by a sale of the premises." Plaintiffs further contend: "It is a contract by one tenant in common with another for the use and occupancy of the other's one-half undivided interest in the land. The relationship of landlord and tenant is created. The defendant is the tenant and Truitt V. Cox is the landlord."

The separation agreement and property settlement, Article 7, provides that Merle D. Cox "shall have the right to sole possession and occupancy of the home and garage apartment on the High Point Road so long as she lives, except as provided below." Such an agreement between tenants in common is valid and enforceable, and binding on them, their heirs, personal representatives, and assigns with notice. *Harper v. Rivenbark*, 165 N.C. 180, 80 S.E. 1057; 86 C.J.S., Tenancy in Common, § 25, p. 384, and § 71; Powell on Real Property, 1960 Cumulative Supplement, Vol. 4, p. 603.

The provisions of the instrument set forth in Article 7 after the words "except as provided below" to the effect that if Merle D. Cox enters a nursing home or changes her place of residence, she shall have the option of either retaining possession of the property and receiving the rentals therefrom, or of surrendering possession of it to Truitt V. Cox for rental by him or his agent, and if she does surrender such possession Truitt V. Cox shall pay her $250.00 a month so long as he retains possesion of the property and receives the rents, and that Merle D. Cox can repossess the property and receive the rentals and then Truitt V. Cox shall pay her only $100.00 a month if she lives on the premises and $50.00 a month if she does not live on the premises but collects the rent, and the provisions of Article 8 of the agreement do not, in our opinion, make her right to the sole possession and occupancy of the High Point Road property so long as she lives uncertain and indefinite, do not create an estate merely terminable at her will, and do not create as between them the relationship of landlord and tenant. See *Stancel v. Calvert*, 60 N.C. 104. Considering Articles 7 and 8 of the separation agreement and property settlement, it is our opinion that it was the clear intent of the parties that Merle D. Cox should have the rights specifically set forth in those Articles so long as she lives, and that such intent is expressed in the instrument in plain and unmistakable words. The cases relied on by plaintiffs are distinguishable.

The separation agreement and property settlement must be read as a whole, and in doing so Article 13 thereof must be considered in

context with the rest of it, and not as a detached fragment, for the real intent of the parties as expressed in the instrument is the dominant object. *Electric Supply Co. v. Burgess,* 223 N.C. 97, 25 S.E. 2d 390. "The heart of a contract is the intention of the parties." *Jones v. Realty Co.,* 226 N.C. 303, 37 S.E. 2d 906.

Agreements must receive a reasonable interpretation, according to the intention of the parties at the time of executing them, gathered from the language employed by them, and in ascertaining that intention we are to consider the character of the contract and its objects and purpose. *First National Bank v. Maryland Casualty Co.,* 142 Md. 454, 121 A. 379, 30 A.L.R. 618.

*Davis v. Frazier,* 150 N.C. 447, 64 S.E. 200, quotes from Bishop on Contracts, § 387, as follows: " 'If the main body of the writing is followed by a proviso wholly repugnant thereto, it must necessarily be rejected, because otherwise the entire contract will be rendered null; but where it can be construed to qualify the main provisions, so that all may stand together, it will be retained.' " This is restated in summary in *Electric Supply Co. v. Burgess, supra.*

"Where the language of an agreement is contradictory, obscure, or ambiguous, or where its meaning is doubtful, so that it is susceptible of two constructions, one of which makes it fair, customary, and such as prudent men would naturally execute, while the other makes it inequitable, unusual, or such as reasonable men would not be likely to enter into, the interpretation which makes a rational and probable agreement must be preferred." 12 Am. Jur., Contracts, p. 792.

*Utely v. Donaldson,* 94 U.S. 29, 24 L. Ed. 54, states: " 'Every intendment is to be made against the construction of a contract under which it would operate as a snare. *Hoffman v. Aetna Ins. Co.,* 32 N.Y. 405.' "

Truitt V. Cox and wife, Merle D. Cox, prior to their separation had lived in the home on the High Point Road. After their separation in May 1948 he instituted an action against her seeking to have title to this property vested in him and his wife as tenants by the entirety. This action was pending for trial when the separation agreement and property settlement was entered into between them. Article 5 of the separation agreement and property settlement between them entered into on 19 January 1951 and duly recorded, provides it has been covenanted, contracted and agreed that this pending action shall be terminated by a consent judgment of dismissal, and there shall be simultaneously with the execution of this agreement an exchange of deeds so as to constitute Truitt V. Cox and Merle D. Cox tenants in common of this property. Apparently, title to the property

was vested in Merle D. Cox, which accounts for the action and this provision of the instrument. The complaint alleges the simultaneous consummation of this part of the separation agreement and property settlement by deeds as specified in the instrument.

Article 13 of the separation agreement and property settlement following the main body of the instrument providing in effect that Truitt V. Cox can sell, transfer and convey his one-half undivided interest in this property, and it shall not be necessary in order that his grantee obtain a good title that Merle D. Cox shall sign the deed of conveyance, is wholly repugnant to Article 7 of the instrument. It is also wholly repugnant to these provisions of Article 6 of the separation agreement and property settlement: "The party of the first part (Truitt V. Cox) covenants, contracts and agrees to pay the mortgage loan payments, both principal and interest, now remaining unpaid upon the mortgage loan which encumbers the High Point Road property until the mortgage debt is paid in full. . . . In the event of the death of the party of the first part before the mortgage is paid in full, his estate shall be and become liable for the payment of the balance then due on said mortgage and the entire amount of said debt, both principal and interest, remaining unpaid shall be a charge and lien upon his one-half in said property so that the one-half interest of the party of the second part (Merle D. Cox) shall be free and clear of all encumbrances." If Article 13 is construed as plaintiffs contend, it would permit Truitt V. Cox to sell and convey one-half or the whole of his undivided interest in the property, and thereby in spite of Article 7 deprive Merle D. Cox of her right of sole occupancy and possession of the property so long as she lives, or of her right if she surrenders the possession to Truitt V. Cox to receive from him $250.00 a month so long as he receives the rentals therefrom, and of her option to repossess it, and receive the rents, and would also deprive her of her rights under Article 6 of the separation agreement and property settlement as quoted above. Under such a construction as contended for by plaintiffs, the instrument would be made inequitable and a snare to Merle D. Cox. Article 13 of the instrument will be rejected insofar as it purports to provide that Truitt V. Cox can sell and transfer his one-half undivided interest or any part thereof, in the home place on the High Point Road owned by himself and Merle D. Cox as tenants in common without the signature and approval of Merle D. Cox, and thereby deprive her of her rights so long as she lives as specified in Article 7 of the separation agreement and property settlement, and of her rights under Article 6 of the same instrument.

Plaintiffs' complaint affirmatively shows that Merle D. Cox's claim of right to sole occupancy and possession of the property on the High Point Road formerly owned by Truitt V. Cox and herself as tenants in common so long as she lives is not a cloud on plaintiffs' title, who purchased with constructive notice, if not actual notice, of her rights under the recorded separation agreement and property settlement.

The judgment below sustaining the demurrer is affirmed, and the part of the judgment dismissing the action is affirmed, as plaintiffs stated to the court that they did not wish to amend their complaint because there were no other facts they could allege.

Affirmed.