R. N. BOWDEN AND WIFE ET AL. v. E. L. LYNCH AND WIFE ET AL.

(Filed 28 March, 1917.)

**1. Wills—Interpretation.**

A will should be interpreted from the perusal of the entire instrument, giving meaning, when possible, to the words or expressions therein used to ascertain and effectuate the testator's intent, having reference to those who are evidently the objects of his care, when the language of the will indicates them.

**2. Same—"Children"—Successive Survivorships—Termination.**

Where a will appears to have been written by one unfamiliar with technical language and the meaning of legal expressions, who used throughout the words "children," "heirs of the body," etc., indiscriminately and with reference to both real and personal property, and devises a part of his real property, after a life estate to his wife, to certain of his children, "and if any of my children before mentioned shall die without heirs lawfully begotten of their body them surviving, then the legacies herein given shall revert back to the survivor or survivors of my children and the lawfully begotten heirs of them surviving forever": *Held,* the intent of the testator will be construed as a devise to his children and the grandchildren, coming within its terms, by successive survivorship, determined with reference to the death of the testator's children, and not that of his own death, his living and named children taking absolutely, subject only to be defeated in the event any of such children die without children.

**3. Same—Deeds and Conveyances—Quitclaim—Title.**

Under a devise of lands to the testator's daughter, but shall she die without children the estate should revert to her sisters and living children, and the daughter has conveyed the land to another and since died without leaving living children, etc., a quitclaim deed to the land made by the contingent remaindermen to the same grantee, of all "right, title,

and interest, estate, claim, and demand, both in law and equity, as well in possession as in expectancy," is sufficient to pass their title to the purchaser. *Beacon v. Amos*, 161 N. C., 367, etc., cited as controlling.

CIVIL ACTION, rtied before *Whedbee, J.,* at February Term, 1916, of GREENE.

This is an action to recover land, both parties claiming under Gray R. Pridgen, who died in 1866, leaving a will, the material parts of which are as follows:

"Item first. I give and devise to my beloved wife, Mary T. Pridgen, during her natural life, all my land, money, stock of every kind, household and kitchen furniture, and in the meantime she, the said Mary T. Pridgen, can give off to each child their respective legacies hereinafter named.

"Item second. I give to my son, H. R. Pridgen, after the death of his mother, Mary T. Pridgen, one-half of my land, one horse, bridle and saddle, one cow and calf, one sow and pigs, two plows and gear, one horse cart, one bed and its necessary furniture, to him and the lawful begotten heirs of his body forever.

"Item third. I give to Egbad Rouse and Edward Rouse, each, one bed and its necessary furniture, to them and the lawful begotten heirs of their body them surviving, but if they leave no issue, then to revert back to my children, Henry R., Elizabeth J., Nancy, Sarah E., and M. B. Hill.

"Item fourth. I give to my daughter Mary B. Hill, wife of D. Hill, one-fourth part of the remainder of my tract of land, and if she die without issue lawfully begotten of her body, then to revert back to my other four children, Henry R., Elizabeth J., Nancy, and Sarah E.

"Item fifth. I give to my daughters Nancy, Elizabeth J., and Sarah E. Pridgen the balance of my land, to share and share alike, also one bed and its necessary furniture, each, to them and the lawful begotten heirs of their body forever.

"My will is that if any of my children before mentioned shall die without heirs lawfully begotten of their body them surviving, then and in that case the legacies herein given shall revert back to the survivor or survivors of my children and the lawful begotten heirs of their body them surviving forever."

The said Gray R. Pridgen died, leaving him surviving five children, viz., Henry R. Pridgen, Mary B. Hill, formerly Mary B. Pridgen, Elizabeth J., Sarah E. Pridgen, and Nancy Pridgen, the testator having only one other child, Winnie Rouse, who died in the year 1863, or three years before the death of testator. Her name does not appear in the will as devisees or legatees, though her children are bequeathed certain personal properties by Item 3 of the will.

In the year 1873 the lands of which Gray R. Pridgen died seized and possessed, and which are situate in said Greene County, and which were devised in his said will, were duly partitioned and allotted in severalty to the said five children of the said Gray R. Pridgen to whom said lands were devised, lot No. 3 in said division having been allotted to said Nancy Pridgen, said lot being the land in controversy.

On 4 January, 1877, Nancy Pridgen executed a deed upon a valuable consideration by which she purported to convey said lot of land to Patrick Lynch, under whom the defendants claim, and on the same day all of the plaintiffs in this action, except the children of Mary B. Hill and Winnie Rouse, executed to said Lynch a deed in consideration of $1, by which they "do bargain, sell, and quitclaim unto the said Patrick Lynch, and to his heirs and assigns forever, all our and each of our right, title, and interest, estate, claim and demand, both at law and equity, and as well in possession as in expectancy of, in and to all that certain piece or parcel of land situated in the county of Greene and State aforesaid, known as lot drawn by Nancy Pridgen in a division of the lands of G. R. Pridgen, deceased, adjoining the lands of Patrick Lynch and others."

Nancy Pridgen died in 1909, leaving no children, but leaving surviving Henry R. Pridgen and Sarah E. Bowden, children of Gray R. Pridgen, and also the children of Winnie Rouse, Mary B. Hill, and Eliza Pollock, all of whom are the plaintiffs in this action.

Mary T. Pridgen, wife of Gray R. Pridgen, is dead.

The controversy arises upon the construction of the last paragraph of the fifth item of the will, and upon the effect of the quitclaim deed to Patrick Lynch.

The plaintiffs contend that upon the death of Nancy Pridgen her share passed under the fifth item of the will to the children of Gray Pridgen surviving her, and to the children of those who had died leaving children, and that the deed to Patrick Lynch, being a quitclaim deed, did not convey this title.

The defendants claim Nancy Pridgen took an estate in fee, but if not, that only the children of Gray Pridgen surviving Nancy Pridgen would take, and that this interest passed under the deed to Lynch, and that if the children of a deceased child are included in the devise, that the deed to Lynch conveyed the title of all the plaintiffs except as to the children of Mary Hill.

His Honor held that the children of Mary Hill were entitled to one-fourth of the land under the devise, and that the defendants were entitled to three-fourths thereof under the deed to Lynch, and entered judgment accordingly, and the plaintiffs and defendants excepted and appealed.

*M. T. Dickinson for plaintiffs.*
*J. Paul Frizzelle and George M. Lindsay for defendants.*

ALLEN, J.   It is apparent from an inspection of the whole will that the paramount and controlling purpose in the mind of the testator was to provide for the five children named therein and their children, and that he intended for the children and grandchildren to take in succession, and not as tenants in common, and this general intent should prevail even against minor considerations in conflict with it if they appeared in the will.   *Lassiter v. Wood,* 63 N. C., 360; *Balsley v. Balsley,* 116 N. C., 477.

It is also clear that the will was drawn by one who was not versed in technical legal rules or language, and that the terms "issue" and "lawful begotten heirs of their body" are used indiscriminately as descriptive of children.   This is illustrated by the third item, in which personal property alone is disposed of, and this is given to Egbad and Edward Rouse and the "lawful begotten heirs of their body," but if they leave "no issue," then "to revert back" to the children of the testator. Here we have "lawful begotten heirs" and "issue" referring to the same class, and evidently meaning children, and this construction has been placed on similar language in a number of cases.   *Tucker v. Moye,* 115 N. C., 71; *Francks v. Whitaker,* 116 N. C., 518; *Smith v. Lumber Co.,* 155 N. C., 392.

In the last case cited items in a will were considered very much like the fifth item in the will before us, and the Court said:   "Construing this will in reference to these authorities and bearing in mind the well-recognized positions that as to wills the intent of the testator as ascertained from the consideration of the whole will in the light of the surrounding circumstances must govern (*Holt v. Holt,* 114 N. C., 241), and that as to both wills and deeds the intent as embodied in the entire instrument must prevail, and each and every part must be given effect if it can be done by fair and reasonable intendment before one clause may be construed as repugnant to or irreconcilable with another (*Davis v. Frazier,* 150 N. C., 447), we are of opinion that the will conveys to the children mentioned in the third item an estate in fee, defeasible on dying without leaving lawful issue of his or her body surviving, and in that event, as to either, and when it occurs, the interest passes to the surviving children or to the 'lawful heirs who may be surviving any of my children'; and that by these words the testator did not intend heirs in the ordinary or general meaning of the term, but surviving issue and in the sense of children and grandchildren, etc., of the devisees named, and that in case this interest should arise to them, they would take and hold as purchasers directly from the devisor."

BOWDEN v. LYNCH.

In the last paragraph in the fifth item "children" must therefore be substituted in one place for "heirs lawfully begotten of their body," and in the other for "lawful begotten heirs of their body," and the paragraph must be read as follows: "My will is that if any of my children before mentioned shall die without children them surviving, then and in that case the legacies herein given shall revert back to the survivor or survivors of my children and the children them surviving forever."

Under the authorities since the case of *Buchanan v. Buchanan,* 99 N. C., 308, the time of dying without children which will give rise to survivorship must be referred to the death of the devisee and not to the death of the testator (*Harrell v. Hagan,* 147 N. C., 111; *Rees v. Williams,* 165 N. C., 201, and cases cited), and the question is, Who are included in the words "children them surviving" as of the death of Nancy Pridgen?

It is presumed that every part of the will "expresses an intelligible intent, i. e., means something" (*Wooten v. Hobbs,* 170 N. C., 214), and this intent is not only to be "gathered from the language used, if possible" (*Freeman v. Freeman,* 141 N. C., 99) "but in seeking for his intention we must not pass by the language he has used. If we do, we shall make the will and not expound it." *Alexander v. Alexander,* 41 N. C., 231, approved in *McCallum v. McCallum,* 167 N. C., 311.

"Every part of a will is to be considered in its construction, and no words ought to be rejected if any meaning can possibly be put upon them. Every string should give its sound." *Edens v. Williams,* 7 N. C., 31.

We must, then, give some meaning to the language "children them surviving"; and they are not the children of the testator because they are already provided for in the same paragraph.

Nor is reference made to children of living children of the testator, as the property is given in the same item of the will to the children of the testator absolutely, subject to be defeated only in the event of dying without children.

The only other conclusion permissible, if we give any meaning to the language of the testator, is that he intended to include the children of deceased children of the testator, and this accords with the leading purpose of the will.

It follows, therefore, that his Honor was correct in holding that the plaintiffs, who are the children of Mary B. Hill, who died before Nancy Pridgen, are entitled to one-fourth of the land in controversy.

The children of Winnie Rouse, who died before the testator, are excluded, because Winnie Rouse is not mentioned in the will, and the de-

vises under the terms of the will are to the children of the testator named, and to the children of those deceased, "before mentioned."

We are also of opinion that the quitclaim deed executed by the plaintiffs passed their interest to the defendant.

It purports to convey all "right, title, and interest, estate, claim and demand, both in law and equity, as well in possession as in expectancy," and is in all material respects like the deed which was sustained in *Kornegay v. Miller,* 137 N. C., 661, which has been approved on this point in *Cheek v. Walker,* 138 N. C., 449; *Smith v. Moore,* 142 N. C., 299; *Beacon v. Amos,* 161 N. C., 367, and is a controlling authority.

In the *Kornegay case* the grantor could only take in the event of a death of one without issue, and before the contingency happened she executed a deed, in consideration of $1 conveying "her right, title, and interest, present, contingent, and prospective," and it was held that the grantor had a "possibility coupled with an interest" which passed by her deed, and that it operated "to vest in the plaintiff the equitable title to all of the interest, title, and estate which she has or may, by the happening of the contingency provided for, have in the *locus in quo;* that this title is something more than the mere right in equity; that in the event of the plaintiff's death without offspring the title will be perfected without any act on the part of the plaintiff or those claiming under him; that the consideration agreed upon by the parties is sufficient and adequate to pass such equitable title, and sustain it in the event the perfect title shall come to her."

There is no error.

Affirmed.