### WESTINGHOUSE ELECTRIC SUPPLY COMPANY v. MELVIN F. BURGESS.

(Filed 28 April, 1943.)

**1. Principal and Surety §§ 8, 9—**

Where a surety for the performance of a construction contract completes the contract upon default by the principal and one, who has furnished materials to both principal and surety for completion of the work, executes and delivers to the surety a full and complete release and discharge of all claims against both surety and principal, excepting, as to principal only, certain definite items, this release constitutes a compromise between surety and materialman, which does not affect the liability of the principal for the excluded items.

**2. Principal and Surety §§ 7, 8: Contracts § 8—**

Great liberality is allowed in construing releases. The intent is to be sought from the whole and every part of the instrument; and where general words are used, if it appears by other clauses of the instrument, or other documents, definitely referred to, that it was the intent of the parties to limit the discharge to particular claims only, courts, in construing it, will so limit it.

APPEAL by plaintiff from *Blackstock, Special Judge,* at First November Extra Term, 1942, of MECKLENBURG. Reversed.

Civil action to recover contract price of materials furnished to defendant.

In 1940-1941, defendant entered into four several contracts with electric membership corporations for the construction of four R. E. A. projects in Davidson, Haywood and Madison counties. He executed, in connection with each project, a faithful performance or compliance bond guaranteeing the payment of all just claims for labor and material. The United States Casualty Company was surety upon each bond. Thereafter, defendant entered upon the fulfillment of said construction contracts and in connection therewith purchased electric materials and supplies from plaintiff for use on said projects. In the early part of May, 1941, the defendant became unable to continue with and complete the same. The surety, under its contract, took charge, assumed control over and completed the work on each of said projects in accord with said contracts. At the time the surety company assumed control the defendant assigned to it all retained percentages and the balance due on the contracts and authorized the company to receive payment of any and all amounts still due by the several contracting parties. The surety company continued to purchase supplies and electric materials from the plaintiff and after the completion of the projects made settlement with the plaintiff.

At the time the surety company made settlement with the plaintiff the plaintiff executed and delivered to it a release agreement as follows:

"For and in consideration of the sum of Forty-Two Thousand Nine Hundred Ninety Three and 40/100 Dollars ($42,993.40), in hand paid to the undersigned, the receipt whereof being hereby acknowledged, the undersigned, Westinghouse Electric Supply Company, does for itself, its successors and assigns release, acquit, exonerate and forever discharge Melvin F. Burgess, an individual of Boone, North Carolina, and the United States Casualty Company, their and each of their heirs, executors, administrators, successors and assigns of and from any and all liability, claims, debts, demands, actions and causes of action of whatsoever kind or character which the undersigned may have against the said Melvin F. Burgess and against said United States Casualty Company by reason of labor, material or supplies of any kind or character performed, furnished or supplied by subcontract or otherwise, in connection with the performance of certain contracts entered into between said Melvin F. Burgess and (the several electric membership corporations here listed) and including particularly any and all liability, claims, debts, demands, actions and causes of action of whatsoever kind or character which the undersigned now has or may hereafter have against said United States Casualty Company on account of, under, or by virtue of certain bonds in the penalties of (the several amounts of the several compliance bonds here listed), executed by said United States Casualty Company as surety and by said Melvin F. Burgess as principal, in accordance with the statutes of the State of North Carolina, and guaranteeing the faithful performance of said contracts.

"And in consideration of the premises, the undersigned does hereby sell, assign, transfer and set over unto said United States Casualty Company, its successors and assigns (all claims for retained percentages and the like against the several electric membership corporations due the defendant).

"In accepting this Release and Assignment it is understood by the United States Casualty Company that the undersigned, Westinghouse Electric Supply Company, retains any and all rights which it may have against Melvin F. Burgess, individually, for items which the United States Casualty Company disclaimed any and all liability under its respective bonds, which for the purpose hereof may be valued at Five Thousand Eight Hundred Seven and 87/100 ($5,807.87) Dollars, and which items are and can be properly identified United States Casualty Company's Analysis of Westinghouse Electric Supply Company's claim involving the contracts and bonds set forth in Frank C. Wachter's (Engineer) reports, dated January 15, 1942, addressed to the United States Casualty Company."

At the time of this settlement materials valued at $5,807.87 were excluded. This balance represented the price of materials which had been furnished by plaintiff to defendant, liability for which was disclaimed by the surety company for the reason that it contended that such materials had not been used on either of said projects.

The plaintiff then instituted this action to recover therefor from the defendant to whom the material had been furnished.

When the cause came on for trial in the court below the parties waived trial by jury and agreed that the court should hear the evidence, find the facts and render judgment thereon. After hearing the evidence the court found the facts of which the foregoing is a summary. It thereupon concluded:

"That the plaintiff, in the first paragraph of Exhibit C (contract of release), released the defendant and the United States Casualty Company from all liability 'by reason of labor, material or supplies of any kind or character performed, furnished, or supplied by subcontract, or otherwise, in connection with the performance' of the contracts enumerated in said exhibit 'C,' and the court having found as a fact that all supplies and materials furnished by plaintiff to defendant and constituting the 'items' referred to in the third paragraph of items 'C' were used 'in connection with the performance of said contracts' designated in the first paragraph of exhibit 'C.' Therefore, the said release constitutes settlement in full to the plaintiff"; and entered judgment that the plaintiff recover nothing and that the action be dismissed. Plaintiff excepted and appealed.

*Carswell & Ervin for plaintiff, appellant.*
*Wade E. Brown and Trivette & Holshouser for defendant, appellee.*

BARNHILL, J. There are no exceptions to the facts found by the court below and there is no real controversy in respect thereto. The plaintiff only challenges the correctness of the legal conclusion drawn therefrom.

While the court below found that all of the materials which were delivered to the projects by the plaintiff were actually incorporated in the projects this fact was denied by the surety. Upon that ground it disclaimed any liability therefor. The result of this dispute was the release agreement which controls the merits of this controversy.

Hence, the question posed for decision is this: Did the plaintiff, under a proper interpretation of the release agreement, reserve and retain its right of action against the defendant for the balance due on the purchase price of the materials furnished and used in the projects by defendant for which the surety did not pay? That is, does the last paragraph of the release agreement constitute an exception to the general release contained in the first paragraph thereof?

A clause of a contract irreconcilable with a preceding clause and repugnant to the general purpose of the contract will be set aside. *Davis v. Frazier,* 150 N. C., 447, 64 S. E., 200.

But the ascertainment of the real intent of the parties as expressed in the instrument is the dominant object. The intent as embodied in the entire instrument must prevail, and each and every part must be given effect if it can be done by fair and reasonable intendment before one clause may be construed as repugnant to or irreconcilable with another. *Davis v. Frazier, supra; Bowden v. Lynch,* 173 N. C., 203, 91 S. E., 957; *Finger v. Goode,* 169 N. C., 72, 85 S. E., 137; *Lefler v. Lane,* 167 N. C., 267, 83 S. E., 463; *Gilbert v. Shingle Co.,* 167 N. C., 286, 83 S. E., 337.

In seeking the intent it is presumed that every part of the contract expresses an "intelligible intent, *i.e.,* means something." *Wooten v. Hobbs,* 170 N. C., 211, 86 S. E., 811; *Bowden v. Lynch, supra;* and in ferreting out this intent the instrument as a whole must be considered. 53 C. J., 59. The intention of the parties is to be collected from the entire instrument and not from detached portions. It is necessary to consider all of its parts, each in its proper relation to the other, in order to determine the meaning of any particular part as well as of the whole. 13 C. J., 525, sec. 486; 13 C. J., 535, sec. 497.

"Great liberality is allowed in construing releases. The intent is to be sought from the whole and every part of the instrument; and where general words are used, if it appears by other clauses of the instrument, or other documents, definitely referred to, that it was the intent of the parties to limit the discharge to particular claims only, courts, in construing it, will so limit it. . . . In determining the effect of an instrument containing words that taken by themselves would operate as a general release, all the provisions of the instrument must be read together; and if on such reading an intent to limit the scope of the release appears, it will be restricted to conform to such intent." 23 R. C. L., 389, sec. 26.

Considering the release agreement between the parties in the light of these well recognized rules of construction we are constrained to hold that the last paragraph was clearly intended as an exception to or a limitation upon the general terms of release contained in the first paragraph.

The material provisions of the agreement may be divided into three parts:

(1) A complete release and discharge of all claims against the principal and surety for labor or material furnished in connection with the performance of the construction contracts by the principal and surety.

(2) An assignment to the surety of all claims or rights of the plaintiff against the electric membership corporations accruing to the plaintiff as subcontractor or materialman.

(3) A reservation of all rights against the defendant, principal contractor, "for items which the United States Casualty Company disclaim any and all liability under its respective bonds," valued at $5,807.87, particularly identified in the report of the engineer, dated 15 January, 1942, and addressed to the surety.

The third provision is not mere surplusage. It was inserted in the contract for a purpose and it was intended to have some meaning and effect. To ascertain that meaning we must look to the disclosed circumstances surrounding the execution of the contract.

The surety was making payment of all claims against it for material furnished to it in completing the contract after the defendant, the principal, found it impossible to proceed. It was likewise making settlement of its liability as surety for claims against the principal for material furnished to him before it took over the work. Acting on the report of its engineer it disclaimed liability for certain specified items charged against the principal. This brought about a disagreement which had to be settled either by suit or by compromise agreement. The parties chose to compromise.

The terms of the compromise sufficiently appear. The surety received a full, complete and unqualified release and discharge. The principal was released and discharged as to all claims against him except for the items designated on the report of the engineer, valued at $5,807.87.

The items thus excepted are definite and certain and are now admitted. For them no one has made payment. The contract price thereof is still due the plaintiff. The parties to the release clearly intended that the release should be no bar to the right of plaintiff to attempt to compel payment thereof by the defendant. Thus the third provision was inserted as a limitation upon the release in general terms as set forth in the first paragraph.

This construction gives force and effect to each provision of the contract and accords with an intelligent intent in conformity with the evident purpose of the parties, and it renders unnecessary the elimination of any part of the contract as being irreconcilable with or repugnant to any other part thereof.

But the defendant contends that the surety disclaimed liability for these items for that the material was not used in the performance of the contract; that it is now found as a fact that the material was so used; and that, therefore, these items of charge therefor were not excepted. That is, he contends that if the third paragraph constitutes an exception, it only excepts items for material which was not used on the projects.

This contention cannot be sustained. The surety, it is true, bottomed its disclaimer of liability on the grounds that the material covered by these items was not used on the projects. That disclaimer brought about the

dispute. The language used in the release, however, contains no such limitation. The items excepted are specifically designated and identified by reference to the engineer's report.

On the facts found by the court below plaintiff is entitled to judgment. Hence the judgment entered must be

Reversed.