CHARLOTTE CITY COACH LINES, INC., A CORPORATION, PLAINTIFF-AP-
PLICANT; v. BROTHERHOOD OF RAILROAD TRAINMEN, AN UNIN-
CORPORATED LABOR ORGANIZATION, DEFENDANT-RESPONDENT.

(Filed 3 February, 1961.)

**1. Pleadings § 15—**

An exhibit attached to and made a part of the complaint may be con-
sidered upon demurrer.

**2. Arbitration and Award § 1—**

An agreement to arbitrate is a contract and is to be construed as other
contracts to ascertain the intent of the parties as gathered from the in-
strument as a whole and not from detached fragments.

**3. Statutes § 5d—**

Statutes dealing with the same subject matter must be construed to-
gether and harmonized to give effect to all the provisions of each, if-
possible, and the whole construed to ascertain the legislative intent.

**4. Arbitration and Award § 2—**

Construing G.S. 95-36.6 and G.S. 95-36.9(b) *in pari materia*, it is held
that G.S. 95-36.6, giving arbitrators the power to decide the arbitrability
of the dispute if there is no agreement to the contrary, is modified by
G.S. 95-36.9(b), giving the courts and not the arbitrators power to decide
whether or not party has agreed to the arbitration of the controversy
involved.

**5. Master and Srvant § 15—**

Where a collective bargaining agreement provides specific procedure
as to grievances before a party should be entitled to demand arbitration
of the dispute, such procedure must ordinarily be followed, in the ab-
sence of facts excusing or waiving such procedure, and in order for a
party to assert waiver, he must allege the facts relied on as constituting
waiver.

**6. Same:—Arbitration and Award § 2— Party must follow procedure
prescribed by the contract in order to be entitled to demand arbi-
tration.**

Where the complaint in an action to stay arbitration proceedings al-
leges that the collective bargaining agreement between the parties specifi-
cally provided that grievances arising out of the suspension or discharge
of an employee had to be filed with the employer within 5 days of such
suspension or discharge, and investigated by representatives of the em-
ployer and employee, with right to demand arbitration from the de-
cision of the investigators, that this grievance procedure was not followed
by or on behalf of the discharged employee, *is held* not subject to demur-
rer, since the right to demand arbitration under the contract is dependent
upon following the procedure therein prescribed, and it is for the courts
to decide whether the grievance came within the scope of the agree-
ment to arbitrate. G.S. 95-36.6, G.S. 95-36.9(b).

**7. Injunctions § 3— Carrier may enjoin unauthorized arbitration which might result in forcing it to breach its duty to public.**

Allegations to the effect that a bus driver for an intracity carrier had been discharged in accordance with the provisions of the collective bargaining agreement between the parties for defective vision in one eye, not correctible to the minimum standard prescribed by the contract, and that he had not followed the grievance procedure prerequisite to demand for arbitration, *is held* sufficient to allege irreparable injury entitling plaintiff to restrain arbitration proceedings initiated by or on behalf of the employee, since to force plaintiff to continue such employee in his employment would compel it to violate its duty to the public to exercise the highest degree of care for the safety of its patrons commensurate with the practical operation of the business.

**8. Pleadings § 12—**

While a demurrer does not admit legal inferences or conclusions of law, it does admit the truth of the factual averments well stated and all relevant inferences of fact legitimately deducible therefrom.

**9. Appeal and Error § 50—**

Upon review of an order continuing an interlocutory injunction to the final hearing, the Supreme Court is not bound by the findings of fact by the trial court, but may review and weigh the evidence and find the facts for itself, although the findings of the trial court will be presumed correct if supported by competent evidence.

**10. Injunctions § 13—**

Where on the hearing of the motion to show cause why the temporary order restraining arbitration of the discharge of plaintiff's driver for defective vision, plaintiff makes it appear that it is a common carrier, that the procedure prerequisite to the right to demand arbitration had not been followed by or on behalf of the employee, and that the employee's eyes were in fact defective within the provisions of the contract authorizing discharge, plaintiff has established his *prima facie* right to the equity of injunction, warranting the continuance of the temporary order to the hearing.

**11. Same—**

When there is a *bona fide* controversy as to a legal or equitable right, a temporary restraining order will ordinarily be continued to the hearing to preserve the *status quo*, especially when the principal relief sought is in itself an injunction, since to dissolve the interlocutory order would virtually decide the case upon its merits.

APPEAL by defendant from *Farthing, J.,* 15 August 1960 Schedule B Nonjury Term of MECKLENBURG.

Complaint and application for a stay of arbitration, heard upon an *ex parte* order issued upon applicant's motion, for defendant to appear and show cause, if any it can, why the temporary restraining order issued should not be continued and made permanent and judgment entered for applicant, and also heard upon defendant's motions

to vacate the *ex parte* temporary restraining order and to stay action pending arbitration award.

Defendant in the Supreme Court filed a demurrer *ore tenus* to the complaint and application for a stay of arbitration.

The complaint and application, with the exhibits attached thereto and made parts thereof, appear on pages two to fifty, both inclusive, in the record. We summarize the material, essential or ultimate facts alleged in the complaint and application and set forth in the exhibits attached thereto and made parts thereof (*Moore v. W O O W, Inc.,* 253 N.C. 1, 116 S.E. 2d 186), so far as relevant to decision here:

Defendant is an unincorporated labor union, and is the collective bargaining agent of all applicant's employees classified as bus operators in the city of Charlotte. On 1 October 1958 applicant and defendant entered into a collective bargaining agreement.

On 1 March 1960, and prior thereto, one J. B. Pierce was employed by applicant as a passenger bus operator in Charlotte. Article II, §8, of the collective bargaining agreement provides: "Employees may be required from time to time to submit to any physical, medical or other examination or re-examination required by the Company, by law or by a regulatory body . . . . The examining physician will be selected by the Company."

On 1 March 1960 J. B. Pierce submitted to an annual physical examination by applicant's doctors, the Matthews-James Clinic. Their report to applicant stated J. B. Pierce had a 20/40 vision of his right eye without glasses and a 20/20 vision of the same eye with glasses, and a light perception only with his left eye, and recommended that he not be employed as a passenger bus driver. Whereupon, applicant relieved Pierce of his duties as a passenger bus driver, employed him as a safety instructor on a temporary basis, and so advised him.

Acting on the recommendation of applicant's doctors, applicant had Pierce's eyes examined by two eye specialists, Dr. Charles W. Tillett and Dr. Jack A. Thurmond. Both these doctors in their report to applicant stated Pierce had a 20/200 vision without glasses in his left eye. Dr. Tillett stated in his report the visual acuity of Pierce's left eye was correctible to 20/70, and Dr. Thurmond stated it was correctible to 20/100. Both doctors stated that, in their opinion, the visual impairment of Pierce's left eye would have no adverse effect upon his driving a passenger bus.

Since applicant began operation of the Charlottte transit system in 1955, it has required all of its passenger bus drivers to meet the minimum physical requirements prescribed by the Interstate Commerce Commission. Since 1952 the minimum qualifications prescribed by such Commission have provided, *inter alia,* as follows:

"Section 191.2 MINIMUM REQUIREMENTS. No person shall drive, nor shall any motor carrier require or permit any person to drive, any motor vehicle unless such person possesses the following minimum qualifications:

\* \* \*

"(b) EYESIGHT. Visual acuity of at least 20/40 (Snellen) in each eye either without glasses or by correction with glasses; \* \* \*" "(Interstate Commerce Commission, Motor Carrier Safety Regulations, Revision of 1952)." The correct citation is: Code of Federal Regulations, title 49, §191.2(b), 1960 Cumulative Pocket Supplement.

Applicant's doctors, after receiving the reports of Drs. Tillett and Thurmond, again stated in a letter to applicant that Pierce should not be allowed to drive a passenger bus, because the reports of Drs. Tillett and Thurmond showed that the visual acuity of Pierce's left eye failed to meet the minimum visual acuity standards required by the Interstate Commerce Commission, which standards are the ones adopted by applicant's doctors as determinative of the fitness of a person to drive a bus of applicant carrying passengers.

On 21 May 1960 the temporary employment by applicant of Pierce as a safety instructor was terminated, and his name was removed by applicant from the senority roster on 1 June 1960. On 8 June 1960 defendant by Pierce, chairman of its local union in Charlotte, wrote applicant a letter protesting the removal of Pierce's name from the senority list or roster of the company. On 10 June 1960 applicant wrote Pierce, chairman of the local union of defendant, that his name was being restored to the seniority list, but that it could not permit him to drive a passenger bus. On the same day an entry was made on Pierce's personnel record with the company that he was suspended due to visual defect found by company doctors during his physical examination, and a copy of this was handed to Pierce by the company. On the same day applicant wrote W. F. Lester, deputy president of defendant, a letter setting forth the facts stated by the aforesaid doctors as to the eyes of Pierce, and their requirements as to eyesight of drivers of passenger busses according to the minimum requirements of the Interstate Commerce Commission, and stating that its decision is compulsory not to permit him to drive, and it would discuss with him other employment for Pierce, which would not involve driving a passenger bus.

On 11 July 1960 defendant, by its attorneys, notified applicant by a letter that it and Pierce are aggrieved by applicant's decision not to continue Pierce in its employment as a driver of a passenger bus, and

by virtue of §58 of their collective bargaining agreement it and Pierce demand arbitration of this grievance.

Applicant has not agreed to the arbitration of the suspension of Pierce as a driver of one of its busses carrying passengers for the following reasons: One, Article XVI, §58, of the collective bargaining agreement provides, *inter alia,* "all grievances arising out of the application of this Agreement must be presented to the Company in writing. Grievances arising out of the suspension or discharge of an employee must be filed with the Company within five (5) days after such suspension or discharge as provided in (Article XVI), §55." Two, written notice of the suspension of Pierce was given to him and defendant on 10 June 1960 by Exhibit G — Letter to Pierce, Chairman of defendant's local union in Charlotte, and by Exhibit J — Letter to W. F. Lester, deputy president of defendant. The only notice of grievance by Pierce and defendant was a letter by attorneys for defendant dated 11 July 1960 in which arbitration was demanded. Three, the failure of defendant to file written notice of its grievance in respect to Pierce's suspension, as required by Article XVI, §58, of the collective bargaining agreement, causes his suspension to be a controversy which applicant has not agreed to arbitrate.

If the letter of defendant's attorneys dated 11 July 1960 was intended as the filing of a grievance, the demand for arbitration is invalid for the reason Article XVI, §58, of the collective bargaining agreement provides that arbitration may not be demanded until the party demanding arbitration has resorted to the grievance procedure.

By virtue of N.C.G.S., §95-36.9(b), applicant is entitled to an order staying arbitration.

Applicant has no adequate remedy at law, and unless the court grants the relief prayed, it will suffer irreparable and substantial damage.

Prior to the hearing by Judge Farthing of the motions set forth above, defendant requested in writing that the judge, if he continued the temporary restraining order to the final hearing, or if he should issue a temporary restraining order to the final hearing, should find the facts.

Judge Farthing's order is, in substance: The judge, after having heard and considered the complaint and application, all affidavits filed in the hearing, and the stipulation of defendant, was of the opinion that the *ex parte* temporary restraining order heretofore issued having expired by its terms should be vacated, and was of the further opinion that he, in his discretion, should grant applicant a preliminary stay of arbitration until the final hearing, and being of the opinion that defendant's motion to stay action pending arbi-

tration should be denied, and its motion to vacate the *ex parte* temporary restraining order heretofore issued should be allowed, found the facts in substance as follows:

Judge Farthing found with particularity the essential or ultimate facts alleged in the complaint and application, and summarized above, and the following facts which are summarized: On 6 March 1960 Pierce was orally notified by applicant's dispatcher that he was suspended as driver of a bus carrying passengers on account of the vision of his left eye disclosed by his physical examination on 1 March 1960. No written grievance was filed with applicant in respect to the suspension of Pierce as driver of a bus carrying passengers within five days from 1 March 1960, or within five days from 10 June 1960, as required by Article XVI, §58, of the collective bargaining agreement. The first written grievance as to the suspension of Pierce as a driver of a bus carrying passengers was in a letter filed by attorneys for defendant on 11 July 1960, in which defendant demanded an arbitration of the suspension of Pierce, and that applicant appoint its arbitrator in five days thereafter. The written demand on 11 July 1960 constituted "written notice of the issue or question to be passed upon at the arbitration hearing" to "a party against whom arbitration proceedings have been initiated" within the meaning of N.C.G.S., §95-36.9(b). Unless applicant is granted a stay of arbitration, it will be required to proceed to arbitration, and be irreparably injured, because such arbitration would be costly to it, and because it would deprive it of rights conferred upon it by N.C.G.S., §95-36.9(b).

Whereupon, Judge Farthing decreed as follows: One, defendant's motion to stay action pending arbitration is denied. Two, defendant's motion to vacate the *ex parte* temporary restraining order is allowed. Three, based upon his findings of fact, and in his discretion, applicant is granted a stay of arbitration until the final hearing.

From the order, defendant appeals.

*Lassiter, Moore and Van Allen for applicant, appellee.*

*Kennedy, Covington, Lobdell & Hickman by W. T. Covington, Jr., and Bailey Patrick, Jr., for defendant, appellant.*

PARKER, J. DEMURRER *ORE TENUS* FILED IN SUPREME COURT.

N.C.G.S., §95-36.6 — Appointment of arbitrators reads in part: "The arbitrator or arbitration panel, as the case may be, shall have such powers and duties as are conferred by the voluntary agreement of the parties, and, if there is no agreement to the contrary, shall have

power to decide the arbitrability as well as the merits of the dispute."

N.C.G.S., §95-36.9 (b) reads: "Any party against whom arbitration proceedings have been initiated may, within 10 days after receiving written notice of the issue or questions to be passed upon at the arbitration hearing, apply to any judge of the superior court having jurisdiction in any county where the dispute arose for a stay of the arbitration upon the ground that he has not agreed to the arbitration of the controversy involved. Any such application shall be made in writing and heard in a summary way in the manner and upon the notice provided by law or rules of court for the making and hearing of motions generally, except that it shall be entitled to priority in the interest of prompt disposition. If no such application is made within said ten-day period, a party against whom arbitration proceedings have been initiated cannot raise the issue of arbitrability except before the arbitrator and in proceedings subsequent to the award."

Defendant contends that, as the collective bargaining agreement here has "no agreement to the contrary" as used in N.C.G.S., §95-36.6, the only consistent interpretation of N.C.G.S., §95-36.9 (b) in the light of N.C.G.S., §95-36.6 is that the Legislature obviously intended for N.C.G.S., §95-36.9 (b) to authorize a stay of arbitration only where the parties have not agreed to leave the issue of arbitrability as well as the merits to the arbitrator, otherwise we would be faced with the inconsistency of the Legislature giving the arbitrator the initial power to decide the issue of arbitrability with the one hand, N.C.G.S., §95-36.6, and with the other hand taking the power to decide the issue from him, N.C.G.S., §95-36.9 (b). Therefore, its demurrer *ore tenus* filed in the Supreme Court should be allowed because the complaint, and the collective bargaining agreement attached to the complaint and made a part thereof show applicant in the collective bargaining agreement agreed to permit the arbitrator to decide the arbitrability of the dispute.

Applicant contends that by the collective bargaining agreement it has not agreed to the arbitration of the controversy involved, because it has agreed to arbitration of grievances only if certain provisions precedent were complied with by defendant as set out in the agreement, and its complaint and application aver that such provisions precedent were not complied with by defendant, and the demurrer *ore tenus* should be overruled.

The collective bargaining agreement is attached to the complaint and application, marked Exhibit A, and made a part thereof. It can be considered on the demurrer *ore tenus*. *Moore v. W O O W, Inc. supra.*

The contentions of the parties necessitate a careful study of the collective bargaining agreement to ascertain its real intent and meaning in respect to the question raised by these contentions. To ascertain this the instrument must be read as a whole and not in detached fragments, for the real intent of the parties as expressed therein is the dominant object. *Electric Supply Co. v. Burgess,* 223 N.C. 97, 25 S.E. 2d 390. In that case it is stated: "In seeking the intent it is presumed that every part of the contract expresses an 'intelligible intent, *i.e.,* means something.' . . . . It is necessary to consider all of its parts, each in its proper relation to the other, in order to determine the meaning of any particular part as well as of the whole."

A submission to arbitration is a contract, and an arbitration agreement is in general subject to the same rules of interpretation and construction as other contracts. 6 C.J.S., Arbitration and Award, p. 166.

Article XVI, §58, of the collective bargaining agreement provides: "Grievances arising out of the suspension or discharge of an employee must be filed with the Company within five (5) days after such suspension or discharge as provided in §55." This section then provides: "All other grievances must be filed in thirty (30) days. . . ." It is obvious that §56 of the agreement is meant rather than §55, for the reason that §55 has nothing in respect to the filing of grievances, and §56 reads as follows: "When an employee has been suspended or discharged, an investigation will be held upon his request provided such request is made in writing within five (5) days from the date of suspension or discharge. At this investigation which shall be held in his presence, the employee may have present a Brotherhood Representative of his own choice and such witnesses as may have information relative to his case. Decision shall be rendered within five (5) days after the investigation is concluded."

Article XVI, §58, of the agreement later on after the sentences we have quoted in whole and in part uses this language: ·

"A sincere endeavor will be made by the parties to have all grievances arising out of the application of this Agreement disposed of by the Local Management of the Company and the Local Brotherhood Representatives. However, the Local Brotherhood Representatives shall have the right to appeal to the General Management of the Company from any decision that may be rendered by the Local Management, said appeal to be taken in ten (10) days. A decision on said appeal shall be rendered within ten (10) days after the appeal is heard, unless the time is extended by Agreement between the Brotherhood and the Company, or the appeal will be considered rejected.

"Within ten (10) days after such decision either of the parties shall have the right to demand arbitration by serving on the agent of the other a notice in writing. In the event of arbitration the Company and the Brotherhood shall each select one arbitrator, and the two so selected by the parties shall undertake to choose the third arbitrator. The party calling for arbitration shall name the arbitrator selected by it in its demand for arbitration, and the other party shall name its arbitrator within five (5) days, excluding Sundays and holidays, after such demand."

What did the parties agree to arbitrate? "Even giving the 'broadest liberalities' to private arbitration, parties to a contract cannot be forced to arbitrate an issue they did not agree to arbitrate." *Refinery Employees Union v. Continental Oil Co.*, 268 F. 2d 447, 452. It seems clear and manifest from the terms of the collective bargaining agreement that its real intent and meaning is that the parties have not agreed to the arbitration of any "grievances arising out of the application of this agreement," unless the grievance procedure provided for in the agreement has been followed.

This Court said in *Blowing Rock v. Gregorie*, 243 N.C. 364, 90 S.E. 2d 898: "Statutes *in pari materia* are to be construed together, and it is a general rule that the courts must harmonize such statutes, if possible, and give effect to each, that is, all applicable laws on the same subject matter should be construed together so as to produce a harmonious body of legislation, if possible."

"Statutes *in pari materia* are to be construed together and where the language is ambiguous, the court must construe it to ascertain the true legislative intent." *Duncan v. Carpenter*, 233 N.C. 422, 64 S.E. 2d 410.

This is said in 50 Am. Jur., Statutes, §362: "It may be presumed to have been the intention of the legislature that all its enactments which are not repealed should be given effect. Accordingly, all statutes should be so construed, if possible, by a fair and reasonable interpretation, as to give full force and effect to each and all of them. Under this rule, it may not be assumed that one or the other of related statutes is meaningless. Such statutes will be so construed as to give each a field of operation."

N.C.G.S., §95-36.6 and N.C.G.S., §95-36.9(b) are *in pari materia*, and were in force at all times relevant here. Construing them together, it is our opinion, and we so hold, that the true legislative intent and meaning of these two statutes is that the provision in N.C.G.S., §95-36.6 to the effect that the arbitrators, if there is no agreement to the contrary, shall have the power to decide the arbitrability of the dispute is qualified by N.C.G.S., §95-36.9(b) to the effect that the

court, and not the arbitrators, is to decide as to whether or not a party has agreed to the arbitration of the controversy involved. Such a construction is fair and reasonable, and it harmonizes and reconciles these statutes. To adopt defendant's contention as to the construction of these two statutes would make the provisions of N.C.G.S., §95-36.9(b) practically meaningless. This means that in this case it is for the court, and not the arbitrators, to decide as to whether or not defendant has followed the grievance procedure provided for in the collective bargaining agreement so as to have a right to demand arbitration of the alleged grievance here.

It is the general rule that where a collective bargaining agreement provides an extra-judicial means of hearing and determining disputes growing out of grievances of employees within the scope of the agreement, an employee must exhaust the remedy provided before resorting to the courts in the absence of facts which would excuse him from pursuing such remedies. *Cone v. Union Oil Co. of California,* 129 Cal. App. 2d 558, 277 P. 2d 464; *Cortez v. Ford Motor Co.,* 349 Mich. 108, 84 N.W. 2d 523; *Jorgensen v. Penn. R. R. Co.,* 25 N.J. 541, 138 A. 2d 24; 56 C.J.S., Master and Servant, p. 262; 31 Am. Jur., Labor, §124. This general rule is founded upon well established principles of the law of contracts and is solidly supported by the purpose of the collective agreements to preserve industrial peace and cooperation between employers and employees.

The collective bargaining agreement here provides for specific procedure as to grievances, and that "within ten (10) days after such decision either of the parties shall have the right to demand arbitration by serving on the agent of the other a notice in writing." Defendant here must exhaust this specific procedure as to grievances, in the absence of facts which would excuse it from pursuing such procedure, before it has a right to demand arbitration. Certainly, this collective agreement would be stultified by permitting defendant to demand arbitration of the grievance here without first having tried to settle the grievance in every way the collective bargaining agreement provides.

The cases relied upon by defendant, e. g., *Mack Mfg. Corp. v. International Union, Etc.,* 368 Pa. 37, 81 A. 2d 562, to the effect that the interpretation of the provisions of the agreement relating to grievance procedure was for the arbitrator to decide, are not in point, because those cases were decided in States which do not have a statute similar to N.C.G.S., §95-36.9(b). Other Courts, e. g., *Local No. 149 Etc., v. General Electric Co.,* (First Circuit), 250 F. 2d 922, *certiorari* denied 1958, 356 U.S. 938, 2 L. Ed. 2d 813, hold that the court has the inescapable obligation to determine as a preliminary matter that the

employer has contracted to refer the controversy to arbitration. The Court in the *General Electric Co.* case was aware of the conflict of authority for it said: "We are aware of a viewpoint urged in responsible quarters that the interests of effective labor arbitration would best be served by committing to the arbitrator in the first instance the question of arbitrability, that is, the question whether there is any issue to be arbitrated under the collective bargaining agreement."

Defendant also relies on *Calvine Cotton Mills v. Textile Workers Union*, 238 N.C. 719, 79 S.E. 2d 181, which is easily distinguishable, and is not in point. First, Section V of the collective bargaining agreement reads in part as follows: "(a) Any grievance, disagreement or dispute between the Company and the Union, arising from the operation or interpretation of this Agreement or concerning wages, hours of employment . . . shall, at the request of the Company or the Union, be settled by arbitration . . . " We have examined the record in this case in the office of the clerk of the Supreme Court, and the parts of the collective agreement there set forth contain no provisions for grievance procedure as here before either party has a right to demand arbitration. Second, the case was an action to vacate an arbitration award under N.C.G.S., §95-36.9(c).

Defendant further avers in his demurrer *ore tenus* that it appears from the face of the complaint and application that applicant waived any alleged non-compliance by defendant with the grievance procedure prescribed in the agreement. No such waiver appears on the face of the complaint and application, and this contention is without merit. Defendant, if so advised, can present that question for decision by pleading waiver and offering what evidence it has, if any, to that effect.

Defendant further avers in its demurrer *ore tenus* that the complaint and application do not aver facts showing it would suffer irreparable damage, and therefore, its demurrer should be allowed.

This Court said in *Harris v. Greyhound Corporation*, 243 N.C. 346, 90 S.E. 2d 710: "The definition adopted by this Court and stated repeatedly is that a carrier owes its passengers 'the highest degree of care for their safety so far as is consistent with the practical operation and conduct of its business.' "

The complaint and application allege that since applicant commenced the operation of the Charlotte transit system in 1955, it has required all drivers of passenger busses to meet the minimum requirements prescribed by the Interstate Commerce Commission, and it quotes from such requirements the minimum requirement for such drivers since 1952 in respect to eyesight. It then avers the facts as to the visual acuity of Pierce's left eye showing he does not meet

such minimum regulation as to eyesight of that eye. It is a general fact known to all people that Bus Companies carrying passengers for hire operating in interstate travel practically operate and conduct their business under the minimum requirement of the Interstate Commerce Commission as to the eyesight of their drivers of such busses. Surely, in the light of the facts alleged here, the effort made here to compel arbitration so as to force applicant to employ and use Pierce as a driver of its busses carrying passengers for hire in violation of its duty to such passengers, and to use Pierce as such a driver, when he cannot meet its minimum requirement as to eyesight, if successful, would cause applicant irreparable damage as being a carrier who was forced to breach the duty it owes it passengers, though it desired to perform such duty by exercising "the highest degree of care for their safety so far as is consistent with the practical operation and conduct of its business." For such a situation applicant has no adequate remedy at law.

The demurrer *ore tenus* admits the truth of factual averments well stated, and such relevant inferences as may be legitimately deduced therefrom, but not legal inferences or conclusions of law asserted by the pleader. *Lumber Co. v. Hunt*, 251 N.C. 624, 112 S.E. 2d 132. Applying such principle to the challenged complaint and application, and the exhibits attached thereto, and made parts thereof, it is our opinion that the demurrer *ore tenus* filed in this Court should be, and it hereby is, overruled.

## TEMPORARY RESTRAINING ORDER.

Defendant assigns as errors the findings of fact Nos. 4, 5, 6, 8, 9, 10, 11, 12 and 14 contained in the temporary restraining order, the failure of the trial court to make findings of fact and conclusions of law as requested by it, and the signing of the temporary restraining order.

"On an appeal from an order granting or refusing an interlocutory injunction, the Supreme Court is not bound by the findings of fact of the judge hearing the application for the writ. It may review and weigh the evidence submitted to the hearing judge and find the facts for itself. The Supreme Court nevertheless indulges the presumption that the findings of the hearing judge are correct, and requires the applicant to assign and show error in them." *Huskins v. Hospital*, 238 N.C. 357, 78 S.E. 2d 116.

The findings of fact made by the hearing judge are supported by competent evidence, and such findings support his conclusions. For instance, defendant assigns as error the eighth finding of fact, to wit:

"On March 6, 1960, Mr. Pierce was notified orally by plaintiff's dispatcher that he was suspended on account of the defect in the vision of his left eye which had been disclosed by his physical examination on March 1." J. B. Pierce in his affidavit introduced before the hearing judge stated: "He was orally advised by a dispatcher of the plaintiff on Sunday, March 6, 1960, that he would not be permitted to drive a bus on the following Monday, for which he had reported for duty to said dispatcher, on account of a defect in the vision of his left eye, which had been discovered by physical examination by Dr. Richard T. James, Jr., the plaintiff's regular employed physician." The complaint and application allege: "On March 1, 1960, J. B. Pierce submitted to an annual physical examination by plaintiff's doctors, the Matthews-James Clinic. A true copy of the report of this physical examination is attached hereto and made a part hereof as EXHIBIT B." Exhibit B states J. B. Pierce's left eye had light perception only. While the order does not state in exact words that probable cause exists that applicant will be able to establish its asserted primary right to stay arbitration, we are of the opinion that his findings of fact show the existence of such probable cause. However, to put the matter at rest beyond debate, we find as a fact from a review and weighing of the evidence that such a probable cause exists, and further we find as a fact that if the stay of arbitration is sustained to the final hearing on the merits, the damage which defendant would suffer is slight as compared with the damage which applicant might sustain in possibly being forced to use Pierce as a driver of a passenger-carrying bus, when he cannot, on the record before us, meet its minimum requirement as to eyesight, if applicant should finally prevail. *Huskins v. Hospital, supra.*

The Court said in *Cobb v. Clegg,* 137 N.C. 153, 49 S.E. 80, (quoted with approval in *Boone v. Boone,* 217 N.C. 722, 9 S.E. 2d 383),: "It is generally proper, when the parties are at issue concerning the legal or equitable right, to grant an interlocutory injunction to preserve the right *in statu quo* until the determination of the controversy, and especially is this the rule when the principal relief sought is in itself an injunction, because a dissolution of a pending interlocutory injunction, or the refusal of one, upon application therefor in the first instance, will virtually decide the case upon its merits and deprive the plaintiff of all remedy or relief, even though he should be afterwards able to show ever so good a case."

The temporary restraining order was properly entered by the hearing judge in the exercise of his sound discretion, and will not

be disturbed. Defendant's assignments of error in respect to it are overruled.

The hearing judge was correct in refusing to allow defendant's motion to stay action pending arbitration award.

Defendant's other assignments of error are overruled.

Affirmed.