Robert NICHOLS, et ano., Plaintiffs,

v.

UNITED EXPOSITION SERVICE
COMPANY, et al.,
Defendants.

UNITED EXPOSITION SERVICE
COMPANY, et al., Third
Party Plaintiffs,

v.

CHARLES D. OWENS MANUFAC-
TURING COMPANY, INC.,
Third Party Defendant.

THALHEIM EXPOSITION, Second
Third Party Plaintiff,

v.

OWEN BROOKER McCAULEY
SALES COMPANY, Second
Third Party Defendant.

No. 93 Civ. 7808 (LAK).

United States District Court,
S.D. New York.

Oct. 12, 1995.

Michael V. Kaplen, De Caro & Kaplen, for plaintiffs.

Diane C. Miceli, Stern, King, Hoey, Toker & Levine, for defendant Miller Freeman, Inc.

Brian J. Powers, Caulfield, Heller & Harris, for defendant Thalheim Exposition.

Jeffrey K. Van Etten, Kral, Clerkin, Redmond, Ryan, Perry & Girvan, for defendant United Exposition Service Co.

Scott P. Taylor, Quirk and Bakalor, P.C., for third party defendants Charles D. Owen Manufacturing Company, Inc. and Owen Brooker McCauley Sales Company.

KAPLAN, District Judge.

On May 8, 1991, plaintiff Robert Nichols, a salesman for third party defendant Charles D. Owen Manufacturing Company ("Charles D. Owen") was injured by a falling exhibit booth while working at a trade show at the Javits Convention Center. The show was organized by defendant Thalheim Exposition ("Thalheim"), then an unincorporated division of defendant Miller Freeman, Inc. ("Miller"). The booth had been erected by defendant United Exposition Service Co. ("United"). Plaintiffs bring this negligence action against Thalheim, Miller,[1] and United. Thalheim and Miller have impleaded Charles D. Owen, Nichols' employer. Thalheim has impleaded Owen Brooker McCauley Sales Company ("Owen Brooker"), alleging that it too employed Nichols at the time of the accident. The matter is before the Court on motions of (a) Thalheim for summary judgment dismissing the complaint as to them on the ground that they were not responsible in any way for the booth that collapsed, (b) Charles D. Owen and Owen Brooker (collectively, "Owen") to dismiss the third party complaints on the alternative grounds that they are barred by a release executed by plaintiffs in their favor in settlement of a prior unrelated action and that they were not negligent, and (c) plaintiffs to try liability and damages separately

---

1. The parties recognize that Thalheim has no corporate existence separate from Miller. The action nominally is pursued against both in consequence of the existence of two separate insurance policies. The Court refers in the portion of this opinion dealing with the summary judgment motions to both Thalheim and Miller Freeman as "Thalheim" in view of the fact that they are the same legal entity and their motions raise identical issues.

and to require Thalheim to select one law firm to represent it at trial.

*The Thalheim Motions*

█ Thalheim's position is simplicity itself. Thalheim ran the trade show at which the accident occurred, leasing space from the Javits Center, selling exhibit space, and obtaining names of contractors to set up booths for exhibitors. United, however, contracted directly with Owen for the construction and rental of the Owen booth in which plaintiff was injured. Hence, Thalheim contends that it owed no duty to plaintiff and that no trier of fact reasonably could find that it was negligent.

Plaintiffs' position is equally straightforward. They point to testimony that Thalheim had personnel on site during the trade show whose responsibilities included ensuring that the installation, operation and breakdown of the show went smoothly. While they were not responsible for installation of the booths, they were charged with walking around the floor during the show and making "sure that everything was the way it was supposed to be ..." There is evidence also that Thalheim personnel at trade shows on occasion had observed boards in exhibit booths that had been "wobbly or unstable" and that looking for such conditions was among their responsibilities. There is no evidence, however, that any such observation was made at the particular show in question.

If Thalheim shared control over the premises in which the accident occurred, its position was equivalent to that of a landowner on whose premises an injury occurs. *See De-Clara v. Barber Steamship Lines,* 309 N.Y. 620, 629–30, 132 N.E.2d 871 (1956). In that event, it may be held liable only if it created or had actual or constructive knowledge of the dangerous condition that caused the accident, but failed to correct it. *E.g., Gordon v. American Museum of Natural History,* 67 N.Y.2d 836, 501 N.Y.S.2d 646, 492 N.E.2d 774 (1986). There is no suggestion here that Thalheim created a dangerous condition. The only questions are whether there is evidence sufficient to raise a triable issue of fact as to (a) the existence of shared control, and (b) actual or constructive notice.

Without unduly extending this memorandum, the Court concludes that summary judgment is inappropriate on these issues. The testimony concerning the presence of Thalheim personnel performing oversight or supervisory functions on the site raises a genuine issue as to shared control. The existence of a triable issue as to constructive notice is evident from (a) plaintiff's testimony that he finished setting up the booth on May 5, 1991, that he had problems with samples sliding off shelves in the booth on May 6, and that he observed the wall to which the shelves were attached wobbling, and (b) the evidence that Thalheim personnel patrolled the exhibition hall and were responsible for looking for such conditions. Viewing the evidence in the light most favorable to the plaintiffs, it appears that a reasonable trier of fact could infer that the allegedly unstable condition of the booth was noticeable for at least two days before the accident and, in consequence, that Thalheim was chargeable with knowledge of that fact.

*The Owen Motion*

█ Owen moves for summary judgment dismissing all claims and cross claims against it on the grounds that a release executed by plaintiffs in its favor bars defendants' claims over against Owen and, in any case, that it is entitled to judgment as a matter of law on the claims over because no reasonable trier of fact could find any basis of liability on its part.

The release in question came about as the result of the termination of Nichols' employment in May 1991. Nichols then sued Owen for wrongful termination in the Western District of North Carolina. That case was settled, and the release signed, on or about July 21, 1993, which antedated the filing of this action but long post-dated the date of the accident here at issue. The threshold question is whether the release surrendered any claim that the plaintiffs may have had against Owen as a result of the accident at the Javits Center.

The release contains recitals describing Nichols' employment and its termination and then states:

"WHEREAS, Nichols and Company [Owen] wish to terminate all incidents of

the Sales Company's employment and the discharge of Employee, such as (but not limited to) any rights that Employee and Spousal Beneficiary may have in any perquisite, wages termination benefit or other incident of employment or termination of Employee by Sales Company." (Taylor Aff. Ex. H).

The releasing clause, however, states:

"For and in consideration of the single payment to Employee in the amount of FIVE THOUSAND DOLLARS AND 00/100 DOLLARS ($5,000.00), Nichols hereby releases Sales Company, White, Mohr, Owen, and Manufacturing ... from any and all claims for relief, demands, damages, actions, and causes of action of every kind or nature that may exist on the basis of any event or facts existing as of the date hereof, whether unknown [*sic* ], or unknown, liquidated or contingent, including but not limited to those:

"(a) arising from Employee's employment by the Sales Company;

"(b) based upon the Age Discrimination in Employment Act of 1967 (the 'ADEA'), as amended, or any state statute governing claims of age discrimination in employment;

"(c) arising from statutes concerning claims of employment discrimination on the basis of any other proscribed factor such as race, sex, sexual orientation, religion, color, national origin, disability, handicap or participation in any war as a member of the United States Armed Services;

"(d) alleging the breach of any express or implied contract of employment; and

"(e) arising from Employee's termination from employment or relationship with any Company." (*Id.*)

Plaintiff claims that the release was not intended to surrender his tort claim and that the subject never even arose in the course of settling the wrongful termination suit. Owen has a somewhat different story, contending that many of the physical and emotional complaints raised in the wrongful termination case were the same as those at issue here

and that the release was intended to buy peace from potential liability of that character.

■ Under North Carolina law, which governs the release, a release is to be construed in a manner that gives effect to the intention of the parties. *Westinghouse Electric Supply Co. v. Burgess,* 223 N.C. 97, 100, 25 S.E.2d 390, 392 (1943). The document must be construed as a whole, giving effect to all of its provisions where possible. *Id.*

Here the document itself, considered without regard to the evidentiary submissions of the parties as to their respective intentions,[2] is ambiguous. While the releasing clause, read without regard to the recitals and the enumerated examples of claims released, contains words characteristic of a general release that would include the claim here at issue, the recitals and examples suggest that the intention of the parties may have been limited to the employment relationship. The Court concludes that the scope of the release is a genuine issue of fact material to resolution of the action. Accordingly, Owen's motion, insofar as it is based on the release, must be denied.

■ Owen's motion for summary judgment on the ground that there is no basis of liability against it also is denied. The evidence submitted on the motion, if accepted by the trier, would support a conclusion that another Owen employee, Franco, was involved in loading the shelves. Given the alleged instability of the booth, Franco's participation might be found to involve a failure to exercise due care that contributed to the accident. Moreover, insofar as Owen seeks dismissal of Thalheim's cross-claim, it ignores the fact that it agreed to indemnify Thalheim against any liability arising from the exhibition.

*Bifurcation*

■ The motion for separate trials is based on the fact that Nichols claims compensation for emotional and psychic injury flowing from the accident, injury that defendants attribute at least in part to events

---

2. The Court defers until trial consideration of the extent to which the parties' evidentiary submissions concerning their respective intentions would be admissible in evidence.

relating to Nichols' termination and subsequent wrongful termination suit. Plaintiffs apprehend that evidence pertaining to these damages issues would prejudice the jury on the liability issue. They contend, moreover, that the expense and duration of the trial would be materially expanded by the damages issues, a burden they would prefer not to bear absent a prior finding of liability.

Given that the other parties either join in or do not oppose the motion, the motion is granted.

### Thalheim's Representation

■ The controversy attending Thalheim's representation arises from the fact that the summons and the caption on the complaint name as defendants "Thalheim Exposition" and "Miller Freeman Inc. d/b/a Thalheim Exposition." "Thalheim Exposition" is identified in the body of the complaint as Thalheim Exposition Inc. and said to be both a New York and a foreign corporation, rather a neat trick. In fact, however, Thalheim Exposition at the time of the events in question was simply an unincorporated division of Miller Freeman, Inc.

As noted, two law firms have appeared on Thalheim's behalf in consequence of the existence of two insurance policies. Plaintiffs argue that the existence of two insurance policies does not warrant the appearance of two law firms for the same defendant. Thalheim, on the other hand, contends that plaintiffs should solve their perceived problem by discontinuing against one of the two Thalheim–Miller Freeman defendants.

This problem is more apparent than real. As it is undisputed that only one legal entity has or, for that matter, could have been sued, the Court will instruct the jury at the outset that the relevant defendant is Miller Freeman, Inc., that Thalheim Exposition was a name under which it did business, and that Miller Freeman, Inc. and Thalheim Exposition for all relevant purposes are a single entity. That entity is entitled to representation of its choice in the trial of this action. If it chooses to have two law firms involved in trying the case, that is its prerogative. The company, however, will be treated as a single defendant for all purposes. Without limiting the generality of the point, it will make a single opening and closing, will have a single opportunity to examine any given witness, and will have to designate lead counsel whose statements and actions will be binding upon it.

### Conclusion

All of the motions for summary judgment are denied. The motion to try liability and damages separately is granted. The motion to require Miller Freeman, Inc. to select a single law firm to represent it in this action is denied, subject to the discussion set forth above.

SO ORDERED.